STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. MARIE MARCHAND, DEFENDANT-APPELLANT.

Argued September 29, 1959—Decided December 7, 1959.

*Mr. Abraham J. Slurzberg* argued the cause for defendant-appellant (*Mr. Abraham Miller,* attorney).

*Mr. Frank J. V. Gimino,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Lawrence A. Whipple,* Hudson County Prosecutor, attorney).

The opinion of the court was delivered by

SCHETTINO, J.   Defendant was granted certification, 29 *N. J.* 510 (1959), to review an affirmance by the Appellate Division of a County Court's conviction and sentence of defendant for the crime of burning a building other than a dwelling house.   *N. J. S.* 2*A* :89–2.

Defendant contends that the trial court erred in permitting the State to put in evidence certain allegedly irrelevant testimony, in allowing the State to attack defendant's credibility before defendant took the stand, and in admitting a certain exhibit.   The State's case rested entirely on circumstantial evidence.

Defendant operated a dress shop owned by a corporation in which she was a stockholder.   On Saturday, December 17, 1955 at about 9 :52 P. M. the Jersey City fire department responded to an alarm of a fire in the dress shop and arrived there at about 9 :57 P. M.   After the fire was put out, fire department officers inspected the premises to try to ascertain the cause.   When the fire department officials left the premises, a police guard was placed at the store to prevent any one from entering.

Shortly thereafter defendant arrived in the company of two policemen.   She was questioned there and later at a police station.   She stated that a girl employee had left the shop at about 8 :45 P. M., that at the time she was about to close up a woman customer walked in, used the telephone, made a purchase, and left, that when the customer left, defendant put the lights out and closed the shop.   It was then about 9 :30 P. M.

At the trial, in answer to a question as to where the fire started, the deputy fire chief stated that he found indica-

tions of several starts of the fire, one, in the back of the store, another, in the right front side of the store, and a third, in the left front side. He also stated that he saw an intense glow from flames in three different spots in the shop but noted no link between any of the areas of the fires. The fire chief also testified. He stated that he was of the opinion that there had been five separate fires in the store and that there was no communication between the fires in the front of the store and those in the rear; that when he and the police inspected the premises two days after the fire, they found two pieces of towel underneath a counter on the right side of the store saturated "with some kind of—what we figure was lighting fluid." The towels were admitted over objection.

Defendant's main contention is that the trial court committed reversible error in admitting into evidence, over objection, a statement by defendant, marked Exhibit S–12. This statement, taken down by a police officer and signed by defendant in the early hours of December 18, was a detailed account of the questions of a detective regarding the fire and defendant's answers. The responses were in many respects contradictory to defendant's testimony at trial. The statement also contained the following:

"Ques. Did you ever have a fire in this store before?
Ans. Yes, last November, 1954.
Ques. Were you insured then?
Ans. Yes, I was insured by the same agent for twenty thousand dollars.
Ques. How much money did you get as a loss at that fire?
Ans. Five thousand dollars.
Ques. [Did] the same insurance co. give you another policy?
Ans. Yes, for twelve thousand dollars."

On direct examination of the State's witnesses no mention was made of the statement of December 18. The first reference to it was by defense counsel during the cross-examination of a fire battalion chief when he asked whether the chief was present when defendant signed a written state-

ment denying that she set fire to the premises. The answer was that he was not present when she signed the statement but he was present when her answers were being reduced to writing. The statement was not mentioned again until the defendant was on the stand when on direct examination she testified that she had not set the fires; that she so informed the police and that "They had the statement and they made me sign."

The State originally made the offer of the statement during the cross-examination of defendant for purposes of contradiction, but the trial court rejected the offer at that time on the ground that the State could not make the offer on defendant's case. Thereafter, when defendant's counsel objected to any reference to S-12 until its voluntariness had been established, the State called a witness to testify to that fact. After that testimony the State offered it in evidence, but defendant objected. In answer to the trial court's question as to the purpose of the statement, the prosecutor stated that it was offered at that time to attack the credibility of the defendant. The following then took place: ·

"The Court: What is your objection?
Mr. Miller: The objection to it is that it is irrelevant and contains material in the statement, an informal statement that doesn't charge this lady with anything—
The Court: Whether it is formal or informal is not important.
Mr. Miller: It has no reference to the particular charge. It has no relevancy, and I ask your Honor to examine it before you rule on it.
The Court: I will look at it. Is this your handwriting?
The Witness: Yes, Judge.
The Court: Let it be marked in evidence."

Thereafter, when defendant was recalled, her counsel asked her about the statement, sentence by sentence, including the references to the previous fire.

■ The argument that S-12 is inadmissible in its entirety is without merit. Defendant does not question its voluntariness before us. As pointed out by the Appellate Division many statements contained in S-12 were "contradictory of

material testimony given by defendant" and when S–12 was first offered by the State, the proffer was bottomed upon its use for that purpose. S–12 was evidential at least as to those parts which would establish contradictory statements by defendant. *Loria's Garage, Inc. v. Smith,* 49 *N. J. Super.* 242, 249 (*App. Div.* 1958); *McCormick on Evidence,* § 59 (1954).

█ Defendant most strongly complains of the admissibility of that part of S–12 referring to the earlier fire. Generally, inquiry into other offenses is prohibited in criminal prosecutions, *State v. Kociolek,* 23 *N. J.* 400 (1957); *State v. Taylor,* 5 *N. J.* 474 (1950); *Johnson v. United States,* 318 *U. S.* 189, 63 *S. Ct.* 549, 87 *L. Ed.* 704 (1943), affirming *United States v. Johnson,* 129 *F.* 2d 954, 144 *A. L. R.* 182 (3 *Cir.* 1942); rehearing denied, 318 *U. S.* 801, 63 *S. Ct.* 826, 87 *L. Ed.* 1164 (1943). There are exceptions not here pertinent. See for example *State v. DePaola,* 5 *N. J.* 1, 11 (1950); *State v. Donahue,* 2 *N. J.* 381, 388 (1949); *State v. Noel,* 102 *N. J. L.* 659, 672 (*E. & A.* 1926); *State v. Sinnott,* 24 *N. J.* 408, 413 (1957); *State v. Kociolek, supra* (23 *N. J.* at *page* 417); 5 *Rutgers L. Rev.* 246, 252 (1950).

█ In *State v. Cohen,* 97 *N. J. L.* 5 (*Sup. Ct.* 1922), defendant was charged with setting fire with intent to defraud certain insurance companies. There defendant's witness referred to a conversation had with defendant. The State sought to put in the entire conversation, particularly a part which referred to an earlier fire. The trial court granted the State's request. The former Supreme Court reversed. Chief Justice Gummere stated that the undoubted general rule is that whenever the statement of a party is put in evidence, all that was said by him at the same time and upon the same subject matter is admissible; and that the whole of it should be taken and considered together; but there is an important limitation to the rule. The proof in such case is to be confined to what was said upon or concerning those matters which are the subjects of inquiry or investigation. Every remark or observation made upon those

topics is to be received as competent evidence, because they may essentially modify the character and purport of the whole conversation, and vitally affect what might otherwise appear to be explicitly asserted or denied. But if other subjects are mentioned, remote and distinct from that which is the object of inquiry or investigation, it is obvious that whatever may be said concerning them can have no tendency to illustrate, vary or explain it. Everything pertaining to these additional and extraneous matters are to be rejected as irrelevant. The opposing party is entitled to have all that was then said in relation to the inquiry laid before the jury; but the door is not thereby opened for the introduction of what was said in relation to an entirely different and unconnected matter, although in the same statement. The Chief Justice went on to say (97 *N. J. L.* at *pages* 9–10) :

"* * * This limitation upon the general rule has not been universally adopted, but it is generally followed both in the courts of England and in those of our sister states. *Wigmore on Evidence,* § 2113 *et seq.;* 16 *C. J.* 571, and cases cited. We are content to adopt a limitation upon the rule, which has met with general approval, and conclude that the testimony objected to was erroneously admitted. That it was harmful to the plaintiffs in error is apparent, for it left the jury to infer that if the plaintiffs in error were benefited by the destruction of the property in Trenton and on that account had set fire to it, then they probably anticipated that they would be benefited by the destruction of the property which was the subject-matter of the indictment, and on that account probably intentionally set fire to it also."

This reasoning is peculiarly applicable to the instant case and the mention of the prior fire was not admissible under any exception to the general rule. See also, *State v. Dietz,* 5 *N. J. Super.* 222 (*App. Div.* 1949). And it is likewise inadmissible to affect the credibility of defendant. *Kociolek* case, *supra,* 23 *N. J.* at *page* 418.

Much of S–12 was admissible to contradict defendant and, therefore, the statement could not have been excluded in its entirety. *Loria's Garage, Inc., supra,* 49 *N. J. Super.* at *page* 249. And when a general objection is made without

pinpointing the specific parts which are sought to be excluded, the trial court is ordinarily justified in admitting the entire exhibit if any part of it is non-objectionable. *McCormick, supra,* § 52. As was stated in *State v. Schmieder,* 5 *N. J.* 40, 47 (1950), several courses are open to protect a defendant. Defendant could have moved to delete or mask the portion of S–12 objected to, or could have asked the trial court to charge the jury to disregard that part and thus limit its effect on the jurors' minds. See also *State v. Rosenberg,* 37 *N. J. Super.* 197, 201 (*App. Div.* 1955); 2 *Wharton, Criminal Evidence* (12 *ed.* 1955), § 361, at *p.* 74.

We are satisfied that the admission of that part of S–12 referring to the earlier fire would have constituted reversible error if properly objected to. The reference could hardly help but have a prejudicial effect on defendant's case. Moreover, the State compounded the prejudicial effect of the reference by recalling a fire department officer and by asking him as to what, if any, official action was taken by the fire department in regard to the earlier fire in November 1954. The implication of arson was firmly implanted. Whether its prejudicial effect against defendant germinated in the jury room or was rendered insignificant by the evidence against defendant in the instant case is a matter of pure speculation. See *Ferry v. Settle,* 6 *N. J.* 254, 258 (1951). It is questionable whether defendant adequately protected herself. But defense counsel was interrupted before he finished his objection and may have been distracted from completing a specific objection. However, we need not determine this question nor whether the admission of the reference to a prior fire constituted plain error under *R. R.* 1:5–1(*a*) in view of our conclusion that this reference plus improperly admitted testimony implying unchaste conduct on the part of defendant, when considered together, constituted reversible error. *State v. West,* 29 *N. J.* 327, 335 (1959); *State v. Orecchio,* 16 *N. J.* 125 (1954).

The reference to possible unchaste conduct arose out of the testimony of one of the State's witnesses on direct exami-

nation. Defendant had told the investigating officers that one Leo Melanson, who was living in her apartment, was her brother. The questioning of the witness was as follows:

"Q. In regard to the statements made by the defendant as to who Leo Melanson was did either you or your brother officer question Leo Melanson in the presence of the defendant, Marie Marchand?
A. Yes, we did.
Mr. Miller: Object to that as immaterial.
The Court: It is possibly admissible on the ground of attacking credibility of the defendant as a witness if she becomes a witness. Go ahead.

\*        \*        \*        \*        \*        \*        \*        \*

The Witness: Well, either Lt. Maier or Detective Dorobis asked who the gentleman was sitting there and Miss Marchand said it was her brother. They spoke some more. I don't know exactly what they said, but anyway a short time later, she said—or he told us rather. He told us he wasn't her—
Mr. Miller: Now, your Honor—
The Court: Who do you mean by 'he'?
The Witness: Melanson told Detective Dorobis that he wasn't her brother. He roomed there. He stayed there.
The Court: Well, you have testified to that already.
The Witness: Yes, sir, I did."

In any event evidence relating to defendant's credibility may not be offered in advance of defendant's appearance on the stand. The effect of such an attack would be to compel defendant to take the stand. Here, the examination would not have been permissible even after defendant took the stand for it was not relevant to any issue in the case and suggested illicit relations as to which there was no judgment of conviction. The testimony was clearly prejudicial. As noted by Judge Jayne in *State v. Bartell,* 15 *N. J. Super.* 450, 458 (*App. Div.* 1951), affirmed by evenly divided court, 10 *N. J.* 9 (1951), "Depreciatory innuendoes and insinuations destitute of all probative substance may be very devastating to the protective rights of a defendant."

As stated in *State v. Rios,* 17 *N. J.* 572, 590 (1955), "everyone charged with crime has an absolute constitutional right to a fair trial in an atmosphere of judicial calm, before an impartial judge and an unprejudiced jury." The accused

"no matter how abhorrent the offense charged nor how seemingly evident the guilt, is entitled to a fair trial surrounded by the substantive and procedural safeguards which have stood for centuries as bulwarks of liberty in English speaking countries." *State v. Orecchio, supra,* 16 *N. J.* at *page* 129. This error and the erroneous admission of evidence of a prior fire in their aggregate rendered the trial unfair and dictate the granting of a new trial. *State v. Orecchio, supra,* 16 *N. J.* at *page* 129.

As the case must be sent back for retrial, we consider an additional ground for appeal which we find to be without merit. Defendant argues that certain pieces of burnt towel should not have been admitted because there was no evidence that these towels in any way were used in the commission of the crime charged or had sparked any one of the five separate fires. The pieces of towel were found at the scene of the fires and the jury could have found them saturated with lighting fluid. Under the circumstances the exhibits were competent proof that the fires were incendiary.

Defendant also argues that the fire chief should not have been allowed to testify that the towels were saturated with "lighting fluid," as he was not shown to be an expert. The trial court's action in this regard was proper. See *State v. Morris,* 98 *N. J. L.* 621 (*Sup. Ct.* 1923), affirmed 99 *N. J. L.* 526 (*E. & A.* 1924); *State v. Campisi,* 42 *N. J. Super.* 138, 148 (*App. Div.* 1956), reversed in part, 23 *N. J.* 513 (1957); *McCormick, supra,* § 12.

Reversed and new trial granted.

*For reversal*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR and SCHETTINO—6.

*For affirmance*—None.