99 N.J. Super. 550 (1968)
240 A.2d 689
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LOUIS EDWARD WADE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 18, 1967.
Decided March 14, 1968.
*553 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Aldan O. Markson argued the cause for appellant (Messrs. Pollack and Markson, attorneys).
Mr. Alan B. Rothstein, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant appeals from a conviction by a jury on an indictment charging him with the crime of breaking and entering Whitey's Tavern in Scotch Plains with intent to steal, in violation of N.J.S. 2A:94-1. This was the third trial of the indictment. Defendant's conviction on the first trial was reversed on appeal. 89 N.J. Super. 139 (App. Div. 1965). The second trial ended in a mistrial due to the failure of the jury to agree upon a verdict.
The tavern was broken into and ransacked during the early morning hours of January 25, 1963. Plainfield police officers in response to a radio call, apprehended two juveniles, Robert Auer, age 16, and Silvestre Guimmaries, age 17, who were riding in an automobile in the vicinity of the tavern at 5:30 A.M. Defendant was picked up by Scotch Plains police officers at about 6:30 A.M. while he was walking on Route 22 about a mile from Whitey's Tavern and two or three blocks from his home.
The State sought to establish defendant's guilt of the crime through the testimony of the two juveniles. Auer testified that he and Guimmaries met defendant at the Wagon Wheel restaurant in Scotch Plains at about 11:30 P.M. on the night preceding the crime. He said defendant asked them *554 to help him out  that they were going to "pull a job." Thereafter the two juveniles and defendant drove in Guimmaries' car to a parking lot across the street from Whitey's Tavern where they waited until all the persons left the tavern for the night. Auer testified that he and the defendant left their wallets in the car together with defendant's eyeglasses so that they would not get lost during the burglary. While Guimmaries waited in the car defendant and Auer broke into the tavern. Once inside they broke open various coin boxes and cash registers, filled a paper bag with money, and helped themselves to drinks. They fled from the building upon hearing someone enter. Auer said he joined Guimmaries in the car and they drove away. Shortly thereafter they were stopped by the police. Guimmaries' testimony substantially corroborated that given by Auer.
Defendant did not take the stand in his own defense. However, his version of the facts is revealed through verbal statements made by him to police officers. He told them that he had met Auer and Guimmaries early in the evening at which time Auer stole his wallet and eyeglasses. He also told the officers he had gone to New Brunswick and had been driven back to Scotch Plains by a friend named Bergman, and that he had been picked up by the police after he had walked a short distance from the place where Bergman had let him out of the car. He denied any participation in the crime.
The crucial issue raised by defendant on this appeal is whether the trial court committed prejudicial error in permitting the State to introduce testimony by a police officer indicating that defendant's wallet and eyeglasses had been found by the police in Guimmaries' car after the crime had been committed. Prior to the trial the court had granted defendant's motion to suppress such articles as evidence on the ground that they had been obtained by means of an unlawful search and seizure.
During the cross-examination of Auer, the following occurred:
*555 "Q. (by defense counsel): Did you mention Louis Wade's name when you were questioned by the Plainfield police?
A. No, sir.
Q. When did you first implicate Mr. Wade in this affair?
A. Well, I was in the cell of Scotch Plains and they brought Louis Wade in. He said that I robbed him of his wallet, hit him on the head and took his glasses. And Lieutenant Powers asked me to make a statement and I made a statement.
Q. Wade said you had robbed him of his wallet and hit him over the head?
A. Yes, sir.
Q. Then for the first time you said Louis Wade was involved in this break-in at Whitey's Tavern?
A. Yes."
Thereafter, during the State's examination of Police Chief Osnato, it became apparent that the witness was concerned about the propriety of testifying about a conversation he had had with defendant concerning the wallet and eyeglasses. At a side bar conference, over defendant's objection that such testimony was proscribed by the pretrial order suppressing such evidence. The trial court ruled that while the wallet and eyeglasses could not be introduced in evidence the witness could testify as to his conversation with defendant concerning such articles, including where they had been found by the police. The court indicated he was permitting such testimony because the defense counsel had "opened the door." Thereafter, the witness testified as follows:
"Q. (by the prosecutor): Chief, you had a discussion with Mr. Wade, right?
A. Right.
Q. In your office?
A. Yes.
Q. Now, can you tell us what he told you pertaining to Mr. Guimmaries and Mr. Auer?
A. He said that he knew nothing about the breaking and entry at Whitey's Tavern. I then asked him the question about what were his glasses and wallet doing in Auer's car and he said that he had met 
MR. MORSS (defense counsel): I must object to this, Your Honor.
THE COURT: All right. Your objection is noted.
MR. MORSS: I must also, in view of the previous order of the Court, ask for a mistrial.
*556 THE COURT: Both your objection is overruled and your motion is denied. Go ahead, sir.
THE WITNESS: Go ahead with it?
THE COURT: Yes.
A. I asked him what the wallet and glasses were doing in Auer's car. * * *" (Emphasis ours)
The admission in evidence of the police chief's testimony that defendant's wallet and eyeglasses had been found in the automobile used by Auer and Guimmaries was improper. There is no distinction between the improper admission of physical tangible objects which have been unlawfully seized by the police and oral testimony concerning the seizure of such objects. Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); McGinnis v. United States, 227 F.2d 598 (1 Cir. 1955); Annotation, "Evidence-Unlawful Search and Seizure," 50 A.L.R.2d 531, 567-569 (1956).
The reason given by the court for permitting the admission of the police chief's testimony, namely, that defense counsel had "opened the door" during his cross-examination of Auer, presumably was based on the rule or doctrine providing for verbal completeness. Preliminarily, there is a question as to whether defendant elicited from Auer the statement that defendant had accused him of stealing his wallet and eyeglasses. That information was volunteered by Auer in response to a question to which the statement was clearly not responsive. But even apart from that, the police chief's testimony was inadmissible. The rule provides that where part of a conversation between a witness and another person (here the defendant) has been elicited during the examination of the witness, the other party may introduce the remaining portions of such conversation which are relevant to the part which has been adduced. 7 Wigmore, Evidence (3d ed. 1940), § 2113, p. 523; State v. Caccavale, 58 N.J. Super. 560, 566 (App. Div. 1959). The object of the rule is to permit the trier of the facts to have laid before it all that was said at the same time upon the same subject *557 matter. However, there is an important limitation to the rule. The door is not thereby opened for the introduction of what was said in relation to an entirely different and unconnected matter. State v. Cohen, 97 N.J.L. 5, 9 (Sup. Ct. 1921); State v. Marchand, 31 N.J. 223, 229-30 (1959).
It is clear that the opening of the door doctrine was inapplicable in the instant case. The rationale of conversational completeness is irrelevant where two separate conversations are involved differing in time, place, parties and subject matter. Auer's testimony concerned a conversation with defendant when Auer was in a cell at police headquarters during which the defendant accused Auer of stealing his wallet. Chief Osnato's testimony related to a conversation at his office with the defendant on a different occasion during which the officer indicated that defendant's wallet and eyeglasses had been found by the police in the automobile used by Auer and Guimmaries after the crime had been committed. The opening of the door doctrine did not authorize the admission in evidence of the latter conversation. 7 Wigmore, Evidence, supra, § 2119, p. 537.
The State does not argue that Chief Osnato's testimony was admissible. However, it contends that its admission was harmless error not warranting a reversal. We do not agree. The record clearly indicates that the State necessarily was compelled to rely upon the testimony of Auer and Guimmaries to obtain a conviction. That defendant's wallet and eyeglasses were found in the automobile following the burglary was the only evidence introduced by the State to corroborate the testimony of the juveniles that defendant had participated with them in the commission of the crime. The importance of such evidence is indicated by the court's reference to Osnato's testimony in its charge to the jury.
Whether the violation of an accused's constitutional rights constitutes harmless error is determined by federal law. Chapman v. State of California, 386 U.S. 18, 21, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Before a violation of a federal constitutional right can be held harmless *558 in a state criminal case, the reviewing court must be satisfied beyond a reasonable doubt that the violation did not contribute to the defendant's conviction. The burden of showing that it was harmless error is on the State. Ibid., at p. 24, 87 S.Ct. 824; State v. McElroy, 96 N.J. Super. 582, 585 (App. Div. 1967). Here the State introduced a highly prejudicial comment referring to evidence which previously had been held wrongfully seized by the police in violation of defendant's constitutional rights and suppressed as evidence at a pretrial motion. Defendant could have suffered no greater harm if the constitutionally proscribed wallet and eyeglasses had been admitted in evidence during the trial. The testimony concerning these articles given by the chief of police unquestionably had a prejudicial impact upon the jury. We are satisfied that such testimony was not harmless error  that it was clearly prejudicial error which requires a reversal of defendant's conviction.
In view of our decision concerning the prejudicial admission of the testimony we deem it unnecessary to pass upon the other grounds urged by defendant for a reversal.
The judgment of conviction is reversed and the case is remanded for a new trial.