246 N.J. Super. 209 (1991)
587 A.2d 272
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
AL GOMEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 18, 1990.
Decided February 19, 1991.
*211 Before Judges PRESSLER, DEIGHAN and BAIME.
Wilfredo Caraballo, Public Defender, attorney for appellant (William E. Norris, designated counsel, of counsel and on the brief).
Jeffrey S. Blitz, Atlantic County Prosecutor, attorney for respondent (James F. Smith, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
Tried by a jury, defendant was found guilty of murder (N.J.S.A. 2C:11-3) and possession of a handgun without the requisite permit (N.J.S.A. 2C:39-5b). The Law Division judge imposed a sentence of life imprisonment on the murder conviction and directed that defendant serve 30 years without parole eligibility. A concurrent five-year sentence with a parole ineligibility term of two and one-half years was imposed on the weapons conviction. In addition, defendant was assessed penalties totaling $60 payable to the Violent Crimes Compensation Board.
On appeal, defendant asserts that (1) his custodial statement was involuntary and should not have been admitted in evidence, (2) the trial court erred by admitting inculpatory portions of defendant's statement while excluding his subsequent exculpatory account of the killing, (3) the Law Division judge committed reversible error by admitting photographs of the decedent, (4) the prosecutor exceeded the bounds of fair comment in his summation, (5) the court's instructions on self-defense, imperfect self-defense and the jury's role in determining the truthfulness of defendant's statement constituted plain error, and (6) *212 the sentences imposed were manifestly excessive and unduly punitive. Although we will comment briefly on each of these contentions, the only argument warranting extended discussion is the claim that the trial court erred by excluding exculpatory portions of defendant's custodial statement. Defendant's remaining arguments are clearly without merit. R. 2:11-3(e)(2).

I.
On April 26, 1987, Demous Fuetler's lifeless body was found in a rooming house in Atlantic City. An autopsy revealed that Fuetler had been shot through the head, the bullet piercing his brain, between three to seven days before the discovery of his body. Further investigation disclosed that defendant had rented the room in which the body was found and that Fuetler had occupied a room on another floor.
Defendant was nowhere to be found. The police learned that defendant had been employed by the Viking Yacht Company in New Gretna, approximately 20 miles north of Atlantic City. Interviews with the payroll clerk and the assistant comptroller of that company revealed that defendant had appeared on the morning after the homicide and had requested his pay, claiming that a relative had been injured in Baltimore and that he needed to visit her. Defendant appeared to be inebriated. Although the work week had not concluded, defendant was given a check for $150. While that amount did not cover his pay for the previous day, defendant never attempted to secure the balance due him.
The record discloses that defendant immediately cashed the check at the First National Bank of Tom's River which is located in New Gretna, approximately one-quarter of a mile from the Viking Yacht plant. Defendant then left New Jersey. He was later arrested in Dakota County, Nebraska, on unrelated charges.
Upon being notified of defendant's apprehension, members of the Atlantic County Prosecutor's office proceeded to Nebraska. *213 On December 3, 1987, Investigator Leslie Folkes and Sergeant Raymond Bollis appeared at the Dakota City jail for the purpose of confirming that defendant was the individual named in the warrant and to make arrangements for his return to New Jersey. The two arrived at the Sheriff's Department at 2:15 p.m. and, after speaking to Nebraska authorities, were led into an interview room where defendant was seated unrestrained behind a desk.
Once in the room, Folkes and Bollis identified themselves, informed defendant that they were investigating a homicide and apprised him of his constitutional rights. At 3:20 p.m., defendant signed a waiver form confirming his understanding of his Fifth and Sixth Amendment rights. Defendant was then asked whether he was Al Gomez and whether he had ever resided in New Jersey. Defendant responded that he was Al Gomez, but that he had never visited or lived in New Jersey. Following these preliminary questions, the officers progressively disclosed to defendant the items they had discovered in the course of their investigation. Several hours later, defendant admitted that he had visited Atlantic City for "a couple" of weeks and had lived under the boardwalk. We note that prior to this concession, defendant had not been questioned in any way about the homicide or the circumstances leading up to it.
When defendant admitted that he once had been in New Jersey, however, Folkes told him that he was charged with the murder of Fuetler. The questions then shifted to the subject of the homicide. Defendant's subsequent statement in which he claimed that he had killed Fuetler accidentally and in self-defense was tape recorded. We need not recount the statement in detail. We merely note that defendant's statement was entirely exculpatory and mirrored his trial testimony which we will describe later in our opinion. At this point it is enough to say that the trial court permitted the State to introduce defendant's original denial of having ever resided in New Jersey, but precluded the defense from admitting defendant's exculpatory account of how the killing occurred.
*214 Thadeus Pugh, an inmate at Annandale Prison, was one of the State's principal witnesses. Pugh recounted several statements allegedly made by defendant while the two were housed together in jail. According to Pugh, defendant confided that he and Fuetler had planned to rob the small bank where he cashed his checks. Gomez indicated that only several women worked at this "little bank" in New Gretna and that he and Fuetler believed the robbery could be committed with ease. However, an argument developed at defendant's residence and Fuetler threatened to tell the police about the planned robbery. Pugh testified that defendant told him he then "pulled a gun" and shot Fuetler in the head. Gomez indicated that after the killing he "grabbed" as many of his belongings as he could and left his apartment. Defendant told Pugh that he initially "was going to tell the police" that an individual broke into his room and that he used the gun for self-defense. Defendant said that he changed his mind, because the lock on the door of his room was not broken and the police would not believe his story. Gomez also told Pugh that he had considered telling the police he and Fuetler were playing Russian Roulette, but decided against that story because he had used an automatic weapon. Defendant indicated that he had fled to Nebraska where he had disposed of the gun. It is undisputed that as a result of his testimony, Pugh's sentence was reduced.
Defendant testified that he and Fuetler had been drinking earlier in the evening. Fuetler left, but later burst into defendant's apartment, demanding that Gomez engage in sexual acts with him. Defendant allegedly grabbed a gun from under his pillow and fired a warning shot. Fuetler refused to leave, suddenly running toward defendant, striking his shoulder, and causing the firearm to discharge.
Based upon the foregoing evidence, the jury rejected the defenses of accident, self-defense and imperfect self-defense and found defendant guilty of murder. This appeal followed.

*215 II.
Defendant argues that the trial court erred by allowing admission of his initial declaration, denying his residence in New Jersey, but excluding his later exculpatory statement. It is argued that defendant's tape recorded account of the killing constituted a declaration against penal interest under Evid.R. 63(10) because he admitted that he had shot the victim. Alternatively, defendant claims that the exculpatory portion of the statement was in some way related to his initial refusal to acknowledge that he had resided in New Jersey and should have been admitted under the doctrine of testimonial completeness. We disagree with both contentions.
We reject defendant's argument that his tape recorded statement in which he claimed that he fired the gun accidentally in the course of defending himself against the victim's sexual attack constituted a declaration against interest under Evid.R. 63(10). The rule permits admission of a statement that, when made, "so far subjected [the declarant] to ... criminal liability ... that a reasonable person would not have made [it] unless he believed it to be true...." Evid.R. 63(10). We recognize that the hearsay exception does not require each discrete part of a statement must imply involvement in a crime. See State v. Abrams, 140 N.J. Super. 232, 235, 356 A.2d 26 (App.Div. 1976), aff'd 72 N.J. 342, 370 A.2d 852 (1977). See also State v. Gaines, 147 N.J. Super. 84, 370 A.2d 856 (App.Div. 1975), aff'd sub nom. 72 N.J. 346, 370 A.2d 854 (1977). Cf. State v. Davis, 50 N.J. 16, 28-29, 231 A.2d 793 (1967), cert. den. 389 U.S. 1054, 88 S.Ct. 805, 19 L.Ed.2d 852 (1968). The critical test is whether the statement so far exposes the declarant to criminal liability that "but for [its] truth [it] would not have been made." State v. Abrams, 72 N.J. at 342, 370 A.2d 852 (Clifford, J., concurring and dissenting). This evidentiary principle rests on the common sense notion that ordinarily one would not utter a statement implicating complicity in a crime unless it was true. The converse rule is that a self-serving statement made after the *216 commission of a crime provides too much opportunity for contrivance to warrant admission. State v. Cerce, 22 N.J. 236, 247, 125 A.2d 689 (1956); State v. Ryan, 157 N.J. Super. 121, 126-127, 384 A.2d 570 (App.Div. 1978).
Applying these principles, the statement here manifestly cannot be regarded as being against the penal interests of defendant. Far from being "contrary to his interests," the statement plainly exculpated defendant from any criminal liability for Fuetler's killing. Although defendant admitted that he possessed a handgun within his apartment, such conduct does not violate N.J.S.A. 2C:39-5b. Under N.J.S.A. 2C:39-6e, "[a] person may keep[] or carry[] about his ... residence" any firearm without the necessity of obtaining a permit to carry.[1]State v. Harmon, 104 N.J. 189, 198, 516 A.2d 1047 (1986). Defendant's description of the events leading to the shooting was wholly exculpatory. In his tape recorded statement, defendant claimed that he produced the firearm for the purpose of creating an apprehension in Fuetler he would use deadly force if necessary. Brandishing a firearm under these circumstances is not barred by the Code. See N.J.S.A. 2C:3-4a. Defendant also asserted alternatively that the fatal shot was fired accidentally or in self-defense. Such conduct is justified under the Code's provisions relating to self-defense. See N.J.S.A. 2C:3-4b.
Examination of the statement in its entirety reveals a clear design on the part of defendant to exonerate himself from criminal exposure after being apprised that he was charged with the commission of a crime. Although our research has *217 disclosed no New Jersey decision on this precise issue, legal commentators and the courts of other jurisdictions have said "a declaration by a defendant that he shot the deceased in self-defense" is "[s]elf-serving and hence inadmissible." 2 Wharton's Criminal Evidence (13 ed. Torcia 1972), § 303 at 98. See also Vandorff v. State, 116 Tex.Crim. 448, 32 S.W.2d 468, 469 (App. 1930); Moss v. State, 208 Ark. 137, 185 S.W.2d 92, 94 (1945); Reado v. State, 690 S.W.2d 15, 17 (Tex. App. 9 Dist. 1984). Under the particular circumstances of this case, we conclude that defendant's exculpatory statement does not constitute a declaration against penal interest. State v. Ryan, 157 N.J. Super. at 126-127, 384 A.2d 570; cf. State v. Boyer, 221 N.J. Super. 387, 398-399, 534 A.2d 744 (App.Div. 1987), certif. den. 110 N.J. 299, 540 A.2d 1280 (1988); State v. Kennedy, 135 N.J. Super. 513, 521, 343 A.2d 783 (App.Div. 1975).
More troublesome is defendant's claim that his exculpatory statement should have been admitted under the doctrine of testimonial completeness. The rule provides that where a part of a conversation between a witness and another person (here the defendant) has been elicited, the other party may elicit the remaining portions which are relevant to the part which has been adduced. State v. Wade, 99 N.J. Super. 550, 556, 240 A.2d 689 (App.Div. 1968); State v. Caccavale, 58 N.J. Super. 560, 566, 157 A.2d 21 (App.Div. 1959); 7 Wigmore, Evidence (Chadbourn rev. 1978), § 2113 at 653. The object of the rule is to permit the trier of the facts to have laid before it all that was said at the same time upon the same subject matter. State v. Wade, 99 N.J. Super. at 556-557, 240 A.2d 689.
The question is more complex and the problems compounded in the context of a declaration which might have both exculpatory and inculpatory portions. The question broached in State v. Abrams was whether the exculpatory portion of a declaration was required to be admitted after the inculpatory part had been introduced. There, the codefendant confessed that she had sold cocaine to an undercover agent, but said that the defendant was *218 not in any way involved. 140 N.J. Super. at 235, 356 A.2d 26. The effect of the statement was to incriminate the codefendant but absolve the defendant. At trial, the defendant was precluded from introducing the statement. We reversed, holding that the tenor of the statement was to expose the codefendant to criminal liability. Id. at 236, 356 A.2d 26. The Supreme Court upheld the reversal on the basis of our opinion. 72 N.J. at 342, 370 A.2d 852. However, Justice Clifford suggested in his concurring and dissenting opinion that the issue turns upon an "inquiry into whether the exculpatory part of the statement (or separate exculpatory declaration) should be permitted to `tag along' with the inculpatory part under the doctrine of continuing trustworthiness." Id. at 343, 370 A.2d 852. See also 5 Wigmore, Evidence (Chadbourn rev. 1974), § 1465 at 339-342. Without setting forth guidelines or criteria, Justice Clifford "would leave that inquiry with the sound discretion of the trial judge." State v. Abrams, 72 N.J. at 343, 370 A.2d 852.
In his dissenting opinion, Judge Conford (temporarily assigned) offered a somewhat similar mode of analysis. Id. at 343, 370 A.2d 852. He reasoned that resolution of the issue hinged upon whether the declaration was to be "considered as constituting one statement or two or more statements." Id. at 344, 370 A.2d 852. If the latter, the disparate portions of the statement not directly incriminating the declarant must be excised because they were not contrary to the declarant's penal interest when made. Ibid. If, however, a correct appraisal of the entire document were that it was essentially a single, integral statement "such that the trustworthiness of the portion admitting liability rubbed off on the portion" absolving the defendant of connection with the criminal transaction, "it should be admissible." Ibid. Like Justice Clifford, Judge Conford suggested that whether the trustworthiness ascribable to the self-inculpatory portion "rubs off" on the portion absolving the defendant was "peculiarly one for the discretionary judgment of the trial judge in the light of all the attendant circumstances." Id. at 345, 370 A.2d 852.
*219 As we noted previously, Abrams concerned a codefendant's statement inculpating herself in a crime, but exonerating the defendant. The facts and the issue here are somewhat different. In this case, the defendant's statement that he had never been in New Jersey was clearly admissible as proof of his consciousness of guilt. However, that statement was intended to be exculpatory. At issue is whether his subsequent contradictory exculpatory account of the killing should have been admitted as well. At least to some extent, however, the analytical framework suggested by Justice Clifford and Judge Conford in their separate opinions in Abrams is nevertheless appropriate. In other words, the question is whether the trustworthiness ascribable to the portion of defendant's statement that was admitted, i.e., his denial of ever having lived in New Jersey, is transferable to the portion in which he exonerated himself from criminal liability.
So posited, the question is easily answered. Defendant's statement that he had never been in New Jersey was not admitted as a declaration against penal interest under Evid.R. 63(10). Clearly, the statement was not against defendant's penal interest. It did not in any sense expose him to criminal liability. Indeed, the opposite is true. Defendant's initial denial of having lived in this state, according to the prosecution, constituted a deliberate fabrication designed by defendant to obfuscate the true facts and prevent Folkes and Bollis from learning them. The statement was not admitted because of its testimonial trustworthiness. Instead, it was introduced as an admission under Evid.R. 63(7). It was admitted to show that defendant lied to throw off the law enforcement officers' investigation. State v. Kennedy, 135 N.J. Super. 513, 343 A.2d 783 (App.Div. 1975); see also Supplemental Report of the New Jersey Supreme Court's Committee on Criminal Procedure, 98 N.J.L.J., Index 435 (1975). Since this initial statement was neither reliable nor trustworthy, there is no reason to believe that defendant's later tape recorded exculpatory account possessed these attributes.
*220 We discern no other jurisprudential principle requiring admission of defendant's tape recorded statement. While we assume that questions concerning application of the doctrine of testimonial completeness arise with some frequency, our research discloses few reported New Jersey opinions dealing with the subject. However, federal decisions offer some guidance. These decisions have interpreted Federal Rules of Evidence 106, 28 U.S.C.A., which codifies the common law rule of completeness and states that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." The federal courts have held that the rule is circumscribed by two qualifications: the portions sought to be admitted (1) must be relevant to the issues and (2) only those parts which qualify or explain the subject matter of the portion offered by the opponent need be admitted. United States v. Walker, 652 F.2d 708, 710 (7th Cir.1981) (en banc). In a series of cases, the two-pronged test has been amplified. Under the doctrine of completeness, another writing or tape recording is "required to be read [or heard] if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." United States v. Soures, 736 F.2d 87, 91 (3rd Cir.1984), cert. den. 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985); see also United States v. Boylan, 898 F.2d 230, 257 (1st Cir.1990), cert. den. ___ U.S. ___, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990); United States v. Sweiss, 814 F.2d 1208, 1211-1212 (7th Cir.1987); United States v. Castro, 813 F.2d 571, 577 (2nd Cir.1987), cert. den. 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987); United States v. LeFevour, 798 F.2d 977, 981 (7th Cir.1986); United States v. Smith, 794 F.2d 1333, 1336 (8th Cir.1986), cert. den. 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986); United States v. Southland Corp., 760 F.2d 1366, 1378 (2nd Cir.1985), cert. den. 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1984); United States *221 v. Garrett, 716 F.2d 257, 272 (5th Cir.1983) (en banc), cert. den. 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984); United States v. Marin, 669 F.2d 73, 83-85 (2nd Cir.1982); United States v. McCorkle, 511 F.2d 482, 487 (7th Cir.1975), cert. den. 423 U.S. 826, 96 S.Ct. 43, 46 L.Ed.2d 43 (1975).
Against this analytical backdrop, we conclude that defendant's later exculpatory tape recorded statement was properly excluded and not admissible under the doctrine of testimonial completeness. The subsequent statement was in no sense explanatory of defendant's prior declaration that he had never lived in New Jersey. Indeed, the two statements are mutually inconsistent, exculpatory versions. In a similar vein, admission of the later statement was not necessary to place defendant's prior declaration in its proper context. Nor was its admission required to avoid misleading the jury or to prevent confusion. Clearly, the two statements, made hours apart and relating to entirely different subjects, were not integrated so that introduction of one required admission of the other.
Although not directly raised, we address the related question whether defendant's tape recorded exculpatory statement was so related in time and subject matter to his concession that he had in fact resided in New Jersey as to compel its admission under the doctrine of testimonial completeness. As we noted previously, despite defendant's initial denial, approximately three hours later into the interview when faced with irrefutable evidence compiled by the investigators, defendant admitted that he had been in New Jersey, and had, for some time, lived under the boardwalk in Atlantic City. Following this admission, the questioning abruptly turned to the subject of the homicide. Also at this juncture, the investigators began to tape the interview. In her testimony before the jury, Folkes related defendant's original denial and his later admission. The trial court barred defense counsel from introducing defendant's subsequent tape recorded statement made after being apprised that he was charged with murder. Defendant's admission that he had lived in Atlantic City, under the circumstances of having *222 been apprised of being charged with murder, constituted a declaration against penal interest under Evid.R. 63(10) based upon its testimonial trustworthiness. Again, as phrased by Justice Clifford and Judge Conford, the question is whether the reliability of that admission "rubbed off" on defendant's later exculpatory statement.
We are convinced that it did not. In reaching this conclusion, we believe that the criteria we identified for determining testimonial completeness are equally applicable in deciding whether the trustworthiness ascribed to a declaration against penal interest is transferable to subsequent exculpatory accounts. These criteria are useful in determining whether incriminatory and exculpatory statements constitute essentially a single, integral account, such that the trustworthiness of the portion admitting liability "rubs off" on the portion absolving the defendant of connection with the criminal transaction. State v. Abrams, 72 N.J. at 344, 370 A.2d 852.
In that context, we are convinced that none of the concerns we identified previously is implicated here. Defendant's tape recorded statement was not in any sense explanatory of his admission that he had been in Atlantic City. It was not needed to place the admitted portion of the statement in context. No misleading impression would have been corrected by introduction of defendant's exculpatory statement. The tape recorded statement was not required to insure a fair and impartial understanding of the facts. Instead, defendant's description of the circumstances surrounding the killing related to an entirely different and unconnected subject. See State v. Wade, 99 N.J. Super. at 557; see also State v. Marchand, 31 N.J. 223, 229-230, 156 A.2d 245 (1959); State v. Cohen, 97 N.J.L. 5, 9, 116 A. 724 (Sup.Ct. 1922). Under these circumstances, it cannot fairly be said that there was some reasonable nexus between the admitted portions of defendant's statement and his subsequent tape recorded exculpatory account of the killing.
*223 One further matter deserves attention before leaving the subject. Defendant does not contend, nor could he, that his tape recorded statement should have been admitted to rebut the charge of recent fabrication. At trial, the State did not contend that defendant's testimony constituted a "recent contrivance." State v. Sullivan, 24 N.J. 18, 39, 130 A.2d 610 (1957), cert. den. 355 U.S. 840, 78 S.Ct. 52, 2 L.Ed.2d 51 (1957). Instead, the State claimed that defendant began formulating a defense immediately after the killing. Under these facts, "[t]he general rule den[ying] admission to prior consistent statements" was clearly applicable. Ibid.

III.
We briefly comment on defendant's remaining arguments. We find no merit in the contention that defendant's statement was involuntary. The trial court's findings in that respect are based on sufficient, credible evidence present in the record. See State v. Micheliche, 220 N.J. Super. 532, 537, 533 A.2d 41 (App.Div. 1987).
We discern no palpable abuse of discretion in the trial court's decision, admitting three of the four photographs of the decedent offered by the prosecution. See State v. Moore, 113 N.J. 239, 296, 550 A.2d 117 (1988). The probative value of the photographs outweighed their potential for undue prejudice. Evid.R. 4.
The prosecutor did not exceed the bounds of fair comment in his summation. Viewed in its proper context, the prosecutor was merely responding to defense counsel's attack upon the integrity of the prosecution. State v. Doyle, 77 N.J. Super. 328, 341, 186 A.2d 499 (App.Div. 1962), aff'd 42 N.J. 334, 350, 200 A.2d 606 (1964). The prosecutor noted the implausibility of the defense counsel's contention that Pugh had been told what to say by members of the prosecutor's office. We perceive no prosecutorial dereliction. In any event, the judge's *224 prompt intervention and clarification obviated the potential for undue prejudice.
Our thorough review of the trial court's instructions on self-defense and imperfect self-defense discloses no error, far less plain error. Because defendant's initial statement denying residence in New Jersey was not offered as proof of the truth of its contents, an instruction directing the jury to determine the credibility of the declaration under State v. Hampton, 61 N.J. 250, 271-272, 294 A.2d 23 (1972) would have been inappropriate. In any event, defense counsel neither submitted a request to charge nor interposed a timely objection. Plain error was not committed.
Additionally, we find no sound basis to disturb the sentence imposed. In imposing the sentence, the trial court weighed the appropriate aggravating and mitigating factors.
Accordingly, the judgment of convictions is affirmed.
NOTES
[1] We note that defendant does not directly challenge his conviction for possession of a handgun without a permit. Evidence was presented at trial that defendant carried the firearm from his apartment after the shooting. The trial judge correctly instructed the jury that possession of the gun while in defendant's apartment did not constitute a crime, but that carrying the weapon outside of the dwelling would violate N.J.S.A. 2C:39-5b. The jury obviously found that defendant had taken the handgun from his apartment.