**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3538-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAMAR HOLMES, a/k/a
JAMAR F. WILSON, and
KEVIN WILSON,

     Defendant-Appellant.

_____

Submitted August 28, 2019 – Decided September 25, 2019

Before Judges Alvarez and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 11-08-1515.

Joseph E. Krakora, Public Defender, attorney for appellant (Karen A. Lodeserto, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Tiffany M. Russo, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jamar Holmes appeals from the January 10, 2018 Law Division order denying his petition for post-conviction relief (PCR) following an evidentiary hearing. Having considered the arguments and applicable law, we affirm.

Following a jury trial, defendant was convicted of murder and weapons offenses, stemming from defendant's fatal stabbing of the victim in a liquor store, equipped with video surveillance.[1] Prior to the stabbing, defendant and the victim had been drinking and smoking marijuana most of the day at the home of a mutual friend, S.H. After appropriate mergers, defendant was sentenced to fifty-five years' imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. In his direct appeal, we affirmed the convictions, but remanded for resentencing. State v. Holmes, No. A-0680-13 (App. Div. Mar. 2, 2015), certif. denied, 222 N.J. 16 (2015). At the re-sentencing hearing, defendant was sentenced to forty years' imprisonment, subject to NERA.

Defendant filed a timely petition for PCR, asserting ineffective assistance of trial counsel, among other things. In his supporting certification, focusing on

---

[1] The surveillance footage depicting the stabbing was played repeatedly for the jury at trial.

his third attorney, Ritchie Roberts, retained approximately one month prior to trial, defendant averred that Roberts misinformed him about his sentencing exposure and the admissibility of an exculpatory statement he made to S.H. the day after the fatal stabbing, resulting in his inability to fairly assess the plea offer. Specifically, according to defendant, Roberts advised him that if he "was convicted at trial, [he] should expect a sentence of [thirty] years with [eighty-five percent] parole ineligibility[,]" and that his statement to S.H., "demonstrat[ing] that [he] did not act purposely or knowingly when [he] stabbed [the victim,]" would be admitted at trial to support "[his] intoxication defense."[2] Defendant continued that had he "known that [he] was exposed to a custodial

_____

[2] After the stabbing, defendant purportedly received a phone call from S.H., advising him that the victim had died, to which defendant replied that he thought he had just "hit him" or had "[j]ust poked him[.]" Prior to trial, the trial court excluded the statement, ruling that it did not qualify as a statement against interest under N.J.R.E. 803(c)(25). In his direct appeal, while we disagreed with the court's reasoning, we determined that "the statement was 'wholly exculpatory' and properly excluded, since 'a self-serving statement made after the commission of a crime provides too much opportunity for contrivance to warrant admission.'" Holmes, slip op at 9-10 (quoting State v. Gomez, 246 N.J. Super. 209, 215-16 (App. Div. 1991)). Nonetheless, we concluded that although the jury did not hear the statement, "which theoretically would have supported a finding of guilt on a lesser offense," because the jury "rejected the intoxication defense[,]" "the exclusion of the statement from the jury's consideration was not error[,]" but rather "inconsequential." Id. slip op. 11-12.

A-3538-17T2

sentence of [fifty-five] years or even [forty] years," he would have accepted "the [twenty-five] year plea bargain offered by the State" and "pled guilty."

The PCR court conducted "a limited evidentiary hearing to determine whether defendant's rejection of the plea offer was made knowingly and voluntarily." Although Roberts "was [un]available to testify at the evidentiary hearing," the court heard testimony from defendant and his two prior attorneys, Sterling Kinsale and William Strauss, both of whom were presented by the State. Following the hearing, the court found all three witnesses "credible" "based on the [c]ourt's opportunity to hear and see the witnesses."

As to Kinsale's testimony, the court made the following factual findings:

> Mr. Kinsale is employed by the Office of the Public Defender, Trial Division, where he has been employed for [twenty-eight] years. Mr. Kinsale has worked exclusively in the homicide unit for the past [eleven] years. Mr. Kinsale testified that he was assigned to defend [defendant] . . . . He further testified that during the course of his representation, he was able to discuss the possibility of a plea agreement with both the State and defendant. Mr. Kinsale testified that he discussed defendant's exposure, including the plea offer and the minimum and maximum exposure after conviction that defendant was facing. Mr. Kinsale testified that he approached the State with a lower offer, which was not accepted. After discussing the offer for [twenty-five] years of imprisonment, defendant informed Mr. Kinsale that he would like to speak with another attorney. Mr. Kinsale testified that he believed defendant understood the conversations that he had regarding his exposure.

4

At that time, the case was reassigned to Bill Strauss within the Office of the Public Defender.

After hearing Strauss' testimony, the court made the following factual findings:

> Mr. Strauss is employed by the Office of the Public Defender, where he has worked for [twenty-eight] years. Mr. Strauss testified that between October and November of 2012 he was assigned to defend [defendant]. Mr. Strauss met with defendant to explain the plea offer at some point within that time period. Mr. Strauss testified that defendant appeared to understand the plea offer, and they additionally discussed the evidence against defendant. Defendant received a copy of the discovery at that time from Mr. Strauss. Mr. Strauss also testified that in every case he is assigned to, he fills out a form with defendant regarding defendant's exposure, and although he was not able to locate that form before this hearing, Mr. Strauss believed that he and defendant went through the same steps he would have with any other trial. Finally, Mr. Strauss testified that during the course of his representation of defendant, the plea offer was [twenty-five] years incarceration, but he had attempted to obtain a better offer for his client.

Finally, the court made the following factual findings regarding defendant's testimony:

> Defendant testified that both Mr. Kinsale and Mr. Strauss discussed the plea offer with him, but he ultimately decided to go to trial with Richard Roberts. Defendant further testified that Mr. Roberts communicated to him that his exposure was limited to [thirty] years incarceration, and that if they were to go to trial, [S.H.] would be permitted to testify regarding a

5

conversation he had with defendant the day following the murder.[3] Defendant believed that this statement supported his testimony at trial that he had no recollection of the murder and was surprised to learn that the victim had died. Defendant testified that Mr. Roberts went on vacation for two weeks before trial commenced and defendant did not have an opportunity to give him the complete discovery. Defendant testified that had he known that he would only have one meeting with Mr. Roberts before trial commenced, he would have accepted the plea offer. On [c]ross[-]examination, defendant testified that he had discussed with both Mr. Kinsale and Mr. Strauss the plea agreement and his maximum exposure.[4] Additionally, defendant testified that at trial, he took the stand in his own defense and testified that he was intoxicated at the time of the murder, had no recollection of the murder and was surprised that the victim died. Defendant understood that the phone call conversation from the day after was ruled inadmissible at trial.

In a January 10, 2018 written decision, the court rejected defendant's numerous contentions and denied relief.[5] After applying the applicable legal

---

[3] Indeed, on cross-examination, defendant acknowledged that both Strauss and Kinsale had also assured him that his statement to S.H. would be admitted at trial.

[4] Defendant admitted knowing that his maximum sentencing exposure was life imprisonment.

[5] Specifically, in addition to rejecting defendant's claims that his trial counsel failed to provide accurate information regarding his penal exposure and the admission of his statement to S.H., the court rejected defendant's claims that he was denied effective assistance of counsel because trial counsel "was

principles, the court concluded defendant "failed to make out a prima facie case" of ineffective assistance of trial counsel to meet the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984), which was later adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 52 (1987). The court expressly rejected defendant's claim that "he would have accepted the plea offer" had he "known the true extent of his [penal] exposure" or that his statement to S.H. would have been excluded. As to the former, defendant admitted knowing that his maximum sentencing exposure was life imprisonment based on the advice of his previous attorneys. As to the latter, relying on our decision in the direct appeal, the court explained that because the jury "rejected" defendant's intoxication defense, rendering the exclusion of the statement "inconsequential," defendant could neither establish that Roberts' "performance fell below the practice and expectations of the legal community[,]" nor satisfy the prejudice prong of the Strickland/Fritz test. The court entered a memorializing order and this appeal followed.

---

unprepared for trial;" "failed to engage or consult a forensic expert to help present an intoxication defense;" and "failed to engage a forensic pathologist to review the medical examiner's findings on the cause of death[.]" Defendant abandoned these latter contentions on appeal.

On appeal, defendant raises the following single point for our consideration:

> THE PCR COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF BECAUSE DEFENDANT ESTABLISHED TRIAL COUNSEL MISADVISED HIM REGARDING HIS SENTENCE EXPOSURE AND MISLED HIM REGARDING S.H.'S STATEMENT BEING ADMISS[I]BLE; THEREFORE, THE MATTER SHOULD BE REMANDED BECAUSE ADDITIONAL TESTIMONY IS NEEDED FROM [ROBERTS].

"In reviewing a PCR court's factual findings based on live testimony, an appellate court applies a deferential standard[.]" State v. Pierre, 223 N.J. 560, 576 (2015). Thus, we "will uphold the PCR court's findings that are supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013) (citing State v. Harris, 181 N.J. 391, 415 (2004)). A "PCR court's interpretation of the law," however, is afforded no deference, and is "reviewed de novo." Id. at 540-41 (citing Harris, 181 N.J. at 415-16). "[F]or mixed questions of law and fact," we "give deference . . . to the supported factual findings of the trial court, but review de novo the lower court's application of any legal rules to such factual findings." Harris, 181 N.J. at 416 (citing State v. Marshall, 148 N.J. 89, 185 (1997)).

To support a claim of ineffective assistance of counsel, a defendant "must prove, by a preponderance of the evidence, that (1) counsel performed deficiently, and made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment; and (2) defendant suffered prejudice as a result." State v. L.A., 433 N.J. Super. 1, 13 (App. Div. 2013) (citing Strickland, 466 U.S. at 687; State v. Preciose, 129 N.J. 451, 459 (1992) (reciting preponderance of the evidence standard of proof)). See also Fritz, 105 N.J. at 58. These principles extend to a criminal defense attorney's representation of an accused in connection with "the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162-63 (2012).

To satisfy the first prong, "a defendant must overcome a 'strong presumption' that counsel exercised 'reasonable professional judgment' and 'sound trial strategy' in fulfilling his responsibilities." State v. Hess, 207 N.J. 123, 147 (2011) (quoting Strickland, 466 U.S. at 689-90). "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. "[I]f counsel makes a thorough investigation of the law and facts and considers all likely options, counsel's trial strategy is 'virtually

unchallengeable.'" State v. Chew, 179 N.J. 186, 217 (2004) (quoting Strickland, 466 U.S. at 690-91).

For that reason,

> an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during the trial. The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of defendant's guilt. As a general rule, strategic miscalculations or trial mistakes are insufficient to warrant reversal except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of a fair trial.
>
> [State v. Castagna, 187 N.J. 293, 314-15 (2006) (citations, internal quotation marks, and alterations omitted).]

Thus, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689.

As to the second prong, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Thus, Strickland's second prong "is satisfied by a defendant's showing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Castagna, 187 N.J. at 315 (quoting

Strickland, 466 U.S. at 694).  This prong "is an exacting standard" and "'[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached.'"  State v. Allegro, 193 N.J. 352, 367 (2008) (quoting Castagna, 187 N.J. at 315) (alteration in original).

Applying these principles, we are satisfied defendant failed to present competent evidence satisfying either Strickland prong.  The advice regarding the admission of defendant's statement to S.H. can hardly be characterized as professionally unreasonable, given the fact that defendant's prior attorneys, both experienced criminal defense attorneys, gave the same advice.  "[S]trategic miscalculations or trial mistakes are insufficient to warrant reversal except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of a fair trial[,]" which is not the case here.  Castagna, 187 N.J. at 315 (citations, internal quotation marks, and alterations omitted).

Like the PCR court, we also reject defendant's contention that he was denied effective assistance of counsel based on Roberts "misleading him regarding his sentence exposure."  Because he claims he would have accepted the plea offer absent Roberts' advice, defendant posits "this matter must be remanded for an evidentiary hearing with testimony taken from [Roberts] as he was the attorney who misled [him.]"  However, defendant's concession that he

was advised by his prior attorneys that his exposure extended to life imprisonment, as well as his acknowledgement that he rejected a twenty-five year plea offer from the State, undermine his claim.

Even if Roberts misinformed defendant that his exposure was thirty years' imprisonment, defendant nonetheless failed to satisfy the second prong of the Strickland test because he rejected a twenty-five year plea offer and took the risk of going to trial with actual knowledge that his maximum sentencing exposure was life imprisonment. Cf. State v. Taccetta, 200 N.J. 183, 193-94, 198 (2009) (rejecting the defendant's ineffective assistance of counsel claim that he "could have entered a guilty plea to the purported plea offer if correctly advised [by his attorney] concerning the sentencing consequences" because to do so defendant would have "commit[ted] perjury in giving a factual basis for a crime he insist[ed] he did not commit[,]" a practice "antithetical to our court rules, case law, and the administration of justice").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3538-17T2