246 N.J. Super. 608 (1991)
588 A.2d 440
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RAYMOND COLON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 5, 1991.
Decided March 25, 1991.
*609 Before Judges ANTELL, SCALERA and KEEFE.
Wilfredo Caraballo, Public Defender, attorney for appellant (Donald T. Thelander, Assistant Deputy Public Defender, of counsel and on the brief).
John J. Fahy, Bergen County Prosecutor, attorney for respondent (Michael Maher, Assistant Prosecutor, of counsel and on the letter brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
After a jury trial, defendant was convicted of two counts of possession of cocaine, N.J.S.A. 2C:35-10a(1), and one count of possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5b(1). According to the evidence, at about 7:40 p.m. on April 22, 1988, a State Trooper stopped an automobile being driven south by defendant on the New Jersey Turnpike. The car had been traveling "at a high rate of speed," and had a cracked tail light. Defendant could not produce his driving credentials and the trooper observed three vials of suspected cocaine on the center console in front of the stick shift. Codefendant Gladys Guzman, who was the car's owner, was riding in the front as a passenger.
*610 The trooper arrested and handcuffed defendant and Guzman and then searched the car, finding, on the floor in front of the driver's seat, a paper bag containing more than five pounds of cocaine. When a glass pipe with brown residue was found in defendant's jacket pocket, defendant acknowledged that he was a user of crack cocaine and that the three vials on the console belonged to him. Both defendant and Guzman at first denied knowledge or ownership of the bag containing more than five pounds of cocaine.
The State's evidence was that after defendant had been given his Miranda warnings he admitted knowing that the bag of cocaine was in the car and what it was there for, presumably for distribution. Detective Schlueter testified that defendant said he knew where the cocaine was going, "but that it wasn't his."
In his defense, defendant said he was operating Guzman's automobile as an accommodation to her. She had asked him to drive her down to Delaware, but he had agreed only to drive her across the George Washington Bridge in return for which she was to give him the three vials of crack cocaine found on the console.
During the trial defendant called Detective Schlueter as a witness. He testified on direct examination that, upon questioning, Guzman told him it was she who had purchased the cocaine from an unidentified person in the Bronx for $47,500. Information was also developed by defendant from this witness about further statements by Guzman, which indicated her extensive involvement in the traffic of controlled dangerous substances. Although it did not directly support his claimed lack of guilty knowledge, it appears to have been defendant's purpose in eliciting this testimony to bring credibility to his claim that the five pounds of cocaine belonged to Guzman and that the situation in which he had been apprehended was one into which he had fallen innocently. Guzman herself was not called to testify, and her statements, though hearsay, were received *611 as declarations against interest. N.J.R.Evid. 63(10). On cross-examination, however, Detective Schlueter was asked the following question by the prosecutor to which he gave the answer following:
Q. What did Miss Guzman say specifically about this cocaine and Mr. Raymond Colon's knowledge of this cocaine, just about, nothing else?
A. She advised me that he knew that the cocaine was in the car. He knew the amount of the cocaine and he knew where it was going.
Defendant's objection to the question was overruled. In reliance upon that testimony the prosecutor argued in summation that defendant "knew about the cocaine in the car, knew where it was headed and knew the purpose of the cocaine. To be distributed."
Except for the three vials of cocaine on the console, defendant denied knowing about any other cocaine in the car. He testified that the admission Detective Schlueter attributed to him was intended to refer only to the three vials. His argument on this appeal is that that the Schlueter testimony on cross-examination recounting the portion of the Guzman statement that incriminated defendant was prejudicial hearsay and its admission constituted reversible error. We agree. The incriminating portion of Guzman's out-of-court statement that asserted defendant's knowledge about the five-pound bag of cocaine went to the heart of the defense, and we cannot say that its admission did not prejudice the defendant.
The theory applied below was that the inculpatory part of the Guzman statement as to the defendant was receivable, under the doctrine of continuing trustworthiness, as a "tag along" with the self-inculpatory portion of the statement. See State v. Powers, 72 N.J. 346, 370 A.2d 854 (1977) (Clifford, J., dissenting); State v. Abrams, 72 N.J. 342, 343, 370 A.2d 852 (1977) (Clifford, J., concurring and dissenting). In those cases defendants were appealing from the trial courts' exclusions of evidence through which codefendants had specifically exculpated defendants as part of their own confessions. Thus, it was held that the "tag along" exculpatory comments should have been *612 received and the convictions were vacated. The facts, however, were the converse of those here, where the question addresses the admissibility against defendant of the part of a codefendant's confession that is inculpatory as to the defendant where defendant had introduced the portion of codefendant's confession that may exculpate him.
The rationale underlying Powers and Abrams does not lie in the mere fact that the self-incriminatory and the exculpatory statements were made side-by-side. It lies in the fact that the latter was intrinsic to the former. In Abrams, the declarant codefendant, Smith, admitted selling cocaine to an undercover detective but denied that she had obtained the contraband from defendant Abrams. As the Appellate Division said, that exculpatory declaration formed part of the declaration against interest because "it intensifies her personal criminal responsibility for the transaction." State v. Abrams, 140 N.J. Super. 232, 235, 356 A.2d 26 (App.Div. 1976), aff'd o.b., 72 N.J. 342, 370 A.2d 852 (1977). Here, the contrary is the case. Although Guzman acknowledged her part in possessing the five pound bag of cocaine, her accusatory reference to defendant's knowledge about the cocaine and its purpose tended to dilute her personal responsibility and advanced the self-serving purpose of ingratiating herself with the police by aiding them in their search for evidence against defendant.
The Supreme Court noted in State v. Gross, 121 N.J. 1, 11, 577 A.2d 806 (1990), that "accomplice statements in Confrontation Clause cases are considered to be presumptively unreliable." Their doubtful character follows from the accomplice's or codefendant's likely motivation "to inculpate the defendant in order to exonerate him or herself, to gain revenge, or to curry favor with the authorities...." Id. at 14, 577 A.2d 806. They are particularly troublesome "in cases in which such statements are sought to be used in the absence of the declarant from court with no realistic opportunity for the defendant to confront the declarant and to attack the prior statement." Id. In Lee v. Illinois, 476 U.S. 530, 541, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514, *613 526 (1986), the Supreme Court of the United States expressed this concern in the following way:
Our cases recognize that this truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination. As has been noted, such a confession "is hearsay, subject to all the dangers of inaccuracy which characterize hearsay generally. .. . More than this, however, the arrest statements of a codefendant have traditionally been viewed with special suspicion. Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence." Bruton v. United States, supra, [391 U.S.] at 141, 88 S.Ct. 1620[, 1630-31], 20 L.Ed.2d 476 [(1968)] (White, J., dissenting) (citations omitted).
We do not overlook the State's argument that fairness to the prosecution requires that since defendant was permitted to introduce that part of Guzman's statement which favored the defense, the incriminating portion should also be received in order to convey the complete meaning of what the declarant was saying. The argument, while superficially attractive, misses the evidential principle that marks the distinction between the two facets of what Guzman said. On the one hand, we have a statement admitted under an exception to the hearsay rule because of its guarantee of testimonial trustworthiness as a declaration against interest. The theory of trustworthiness which supports the exception is that the statement so far subjects the declarant to criminal liability "that a reasonable man [woman] in his [her] position would not have made the statement unless he [she] believed it to be true...." N.J.R. Evid. 63(10). The statement inculpating defendant, on the other hand, carries no such guarantee and, in fact, because of its self-serving nature, is presumed to be unreliable, something which is aggravated by the absence of any opportunity for cross-examination. We therefore see no lack of fairness to the State in precluding it from countering a presumably trustworthy statement with one that is presumably untrustworthy.
Nor was Guzman's reference to defendant's knowledge admissible under the doctrine of testimonial completeness. That doctrine requires that

*614 where a part of a conversation between a witness and another person (here the defendant) has been elicited, the other party may elicit the remaining portions which are relevant to the part which has been adduced. State v. Wade, 99 N.J. Super. 550, 556 [240 A.2d 689] (App.Div. 1968); State v. Caccavale, 58 N.J. Super. 560, 566 [157 A.2d 21] (App.Div. 1959); 7 Wigmore, Evidence (Chadbourne rev. 1978), § 2113 at 653. The object of the rule is to permit the trier of the facts to have laid before it all that was said at the same time upon the same subject matter. State v. Wade, 99 N.J. Super. at 556-557 [240 A.2d 689].
State v. Gomez, 246 N.J. Super. 209, 217, 587 A.2d 272 (App. Div. 1991).
In our view, the two Guzman statements constituted comments on separate subjects. The part adduced by defendant conveyed the fact that Guzman was a substantial drug dealer and that it was she who had bought and owned the cocaine. It was unrelated to defendant's knowledge vel non, and the part adduced by the State to the effect that defendant knew about the cocaine was therefore not relevant to what had been elicited by defendant.
We observe that Guzman's inculpatory reference to defendant is objectionable for the further reason that it merely expresses the declarant's conclusion as to defendant's state of mind without providing any factual basis. "From ... [non-expert witnesses], only facts perceived by the use of their senses, and not mere ... conclusions based upon the facts supposedly within their knowledge, are adducible in evidence...." Priest v. Poleshuck, 15 N.J. 557, 562, 105 A.2d 541 (1954).
Finally, although we do not rest our determination on this fact, we note that N.J.R.Evid. 63(10) expressly states that a declaration against interest "is not admissible against a defendant other than the declarant in a criminal prosecution."
Reversed and remanded for further proceedings consistent with this opinion.