678 A.2d 1092

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. G.S., DEFENDANT–RESPONDENT.

Argued January 3, 1996—Decided July 24, 1996.

*Nancy A. Hulett,* Deputy Attorney General, argued the cause for appellant (*Deborah T. Poritz,* Attorney General of New Jersey, attorney).

*Helen E. Szabo,* Designated Counsel, argued the cause for respondent (*Susan L. Reisner,* Public Defender, attorney).

The opinion of the Court was delivered by

HANDLER, J.

In this case, the defendant was indicted and convicted for repeated acts of sexual molestation of his stepdaughter over a three-year period. Some of the evidence admitted at trial related to acts of sexual molestation that allegedly occurred over a period of time before the offenses charged in the indictment allegedly happened.

The trial court instructed the jury that such evidence may not be considered as demonstrating that defendant had a predisposition to commit the offenses charged, but failed more specifically to explain to the jury the relevance of that evidence to any issue in dispute and, further, to so restrict its consideration of that evidence.

The jury convicted defendant of the offenses charged. In a reported decision, the Appellate Division reversed the convictions. 278 *N.J.Super.* 151, 650 *A.*2d 819 (1994). Because of a dissent, the matter was appealed to this Court as of right. *R.* 2:2–1(a). Based on the dissent, the sole question to be determined is whether the failure of the trial court to give a limiting instruction restricting the use of such other-crime evidence constituted reversible error.

I

In 1979, when L.K. was eight years old, her mother married defendant G.S. The family resided in Monmouth County. 278 *N.J.Super.* at 159, 650 *A.*2d 819. In 1982, at age eleven, L.K. attended a school assembly in which an instructor discussed "good

touching and bad touching." *Id.* at 159–60, 650 *A.*2d 819. A few weeks later, L.K. received a poor school grade and was told by her mother that she would be punished with a spanking from defendant. L.K. informed her mother that she did not want defendant to spank her because she believed that he would spank her bare bottom in order to view her genitalia. L.K. further informed her mother that defendant had inappropriately touched her. *Ibid.* Also, L.K. told her mother that defendant would fondle L.K.'s genitalia while bathing her, and had ordered L.K. to lie naked on his bed so that he could stare at her naked body. *Id.* at 160, 650 *A.*2d 819.

The Division of Youth and Family Services ("DYFS") became involved with the family, and L.K. was placed first in her Aunt Dee's home and then in foster care. *Ibid.* While L.K. was in foster care, defendant was charged with endangering the welfare of a child. *Ibid.* Those charges were dismissed when defendant was accepted into the Monmouth County Pretrial Intervention Program. Because her mother did not believe or support her, L.K. eventually recanted her accusations against defendant. *Ibid.* In 1983, L.K. returned to the home of her mother and defendant in Monmouth County. *Ibid.*

In November of 1983, L.K. and her family moved to Sussex County. *Ibid.* Approximately six months later, defendant allegedly resumed molesting L.K. and by 1987 was allegedly engaging in sexual relations with L.K. three times each week. *Ibid.* L.K.'s mother was frequently not home because she worked at night and regularly attended Bible classes. *Id.* at 170, 650 *A.*2d 819. L.K. testified that these sexual encounters were virtually never interrupted because defendant always brought L.K. into defendant's bathroom, defendant's bedroom, or L.K.'s bedroom, and always locked the door.

L.K. testified about sexual activity with defendant that began with genital fondling but escalated extensively over time. *Id.* at 159, 650 *A.*2d 819. Also, L.K. alleged that when she was fourteen years old, defendant required her to disrobe and exhibit herself to

her ten-year old brother, and allow him to fondle her as sex education. *Ibid.*

L.K. testified that she remained silent about the Sussex County abuse as it occurred because defendant told her that if she informed anyone, the government would put her and her siblings in foster care. L.K. stated that because she believed defendant's threats, she remained silent for several years about the abuse.

On one occasion, however, L.K. briefly disclosed to her close girlfriend, A.C., that defendant was sexually abusing her, but implored A.C. to refrain from telling anyone. A.C. told her guidance counselor, Mary Kronick, by saying it was someone at the school L.K. attended. Mary Kronick contacted a guidance counselor at L.K.'s school who, knowing of L.K.'s prior accusations, asked L.K. if she was having problems at home. L.K. vehemently denied any problems.

On February 4, 1987, L.K. informed her boyfriend that she thought she was pregnant. *Ibid.* The boyfriend successfully persuaded L.K. to disclose who had impregnated her, *ibid.*, and then told his mother. The boyfriend's mother contacted DYFS authorities; L.K. told the DYFS authorities about much of the alleged abuse, and defendant was arrested. *Ibid.* A few days later a gynecological examination revealed that her pregnancy symptoms were caused by a cyst on her ovary.

At trial, the State's primary witness was L.K. who recounted the details of defendant's alleged abuse. The State's other witnesses included L.K.'s former girlfriend A.C. and L.K.'s former boyfriend, both of whom testified that L.K. had confided in them about her stepfather's abuse. A.C. further testified that she never heard anyone in her family or community say "bad things" about L.K. Mary Kronick, A.C.'s guidance counselor, corroborated the testimony of L.K. and A.C., stating that A.C. had come to her seeking advice about an unidentified friend who was being sexually abused by her stepfather. The State also submitted various documents from DYFS containing L.K.'s allegations. The testimony of these witnesses and the documentation were consistent

with L.K.'s trial testimony. L.K.'s mother did not testify because she died before trial.

The crux of the defense's strategy was portraying L.K. as a liar. *Id.* at 167, 650 *A.*2d 819. Defendant did not testify. The defense relied on extensive cross-examination of L.K. concerning the exact dates and details of the various alleged sexual activities between L.K. and defendant, and L.K.'s failure to record the abuse in her diary, which defendant produced at trial. The defense sought to demonstrate that L.K.'s accusations were fabricated and motivated by her bias against her stepfather. *Ibid.* Defendant attempted to establish that L.K. disliked him because defendant's strict discipline of her interfered with her relationship with her boyfriend. *Id.* at 167–68, 650 *A.*2d 819.

The defense also elicited on cross-examination of L.K.'s former boyfriend that L.K. had a reputation within her church youth group for lying. The defense also called Aunt Dee, the sister of L.K.'s mother with whom L.K. temporarily resided following her removal from the Monmouth County home, who testified that as a child L.K. frequently told "tall stories" to gain attention. Finally, the defense called private investigator Richard Childs, who testified that he interviewed A.C. and that she indicated that L.K. had a reputation for lying. Additionally, defendant's mother testified that, though she frequently visited L.K.'s home during the years in which the alleged abuse was occurring, L.K. never informed her of the abuse.

In rebuttal, the State called Richard Devine, a nursing home administrator who supervised L.K. when she volunteered at the home around the time of the alleged abuse, and L.K.'s former music teacher. They testified about L.K.'s exceptional honesty and character.

The issue on appeal arose in the following manner. In his opening statement, defense counsel depicted L.K. as being untruthful. Counsel suggested that L.K.'s former accusations in Monmouth County, which L.K. later recanted, illustrated L.K.'s tendency to lie. At trial, the State sought to present evidence of

the sexual activity in Monmouth County, L.K.'s accusations and following recantation, and defendant's admission into the Monmouth County Pretrial Intervention Program. 278 *N.J.Super.* at 160, 650 *A.2d* 819. The trial court permitted the State to admit the Monmouth County evidence, under *N.J.R.E.* 404(b) (formerly *Evid. R.* 55), to: (1) illustrate that defendant intended to engage in sexual contact with L.K. for the purpose of his own sexual gratification, an element of the charged offense, *N.J.S.A.* 2C:24-4a; and (2) explain why L.K. did not confide in her mother about the abuse occurring in Sussex County. 278 *N.J.Super.* at 160, 650 *A.2d* 819.

On direct examination, L.K. began to testify about the Monmouth County incident. The court, however, interrupted L.K.'s testimony and gave the following instruction:

Members of the jury, under our Rules of Evidence in the State of New Jersey, where evidence is presented that an individual committed a—crime or a civil wrong on a specified occasion, it is inadmissible to prove an individual's disposition to commit a crime or civil wrong as the basis for an inference that the individual committed a crime or civil wrong on another specified occasion.

However, such evidence is admissible to prove another fact in issue. And, another fact in issue includes a motive, an intent, a plan, a knowledge, entity, [sic] or absence of mistake or accident. And so this evidence, which the State seeks to elicit from [L.K.], the Court permits you to hear this evidence with regard to these Monmouth County—this Monmouth County matter on that basis. On the basis of the—going to issues of notice, intent, plan, knowledge, entity [sic] or absence or mistake or accident. But not to draw any inference that because a crime or civil wrong may have been committed on one occasion, as the basis for inference to commit a crime or civil wrong on another occasion.

Following that instruction, defense counsel objected to the jury being told that the Monmouth County evidence was admissible to prove motive, intent, and plan. Defense argued that defendant was entitled to be "cloaked with confidentiality" because he successfully completed a pretrial intervention program. The trial court agreed to conduct an evidentiary hearing. At the hearing, the trial court indicated that it would instruct the jury that L.K.'s accusations in Monmouth County were mere allegations, and that defendant was never convicted. Resuming the trial, the court gave the jury the following instruction:

If you recall the other afternoon, one of the last questions [the prosecutor] was asking [L.K.] was about whatever conversations she had with her mother. I wish to go over that with you at this time before [the prosecutor] continues to question his client. And to give you some instruction with regard to this potential testimony by the witness.

As I indicated to you the other day, under our Rules of Evidence, in the State of New Jersey, the rule indicates that there is evidence that a person committed a crime or a civil wrong on specified occasion, that is inadmissible to prove that a person has a disposition to commit a crime or civil wrong as a basis for drawing an inference the person committed a crime or civil wrong on another specified occasion. But, the rule does permit such evidence to be admitted to prove some other fact that may be in issue. Fact—a fact that would involve, for instance, questions of motive, intent, plan, knowledge, identity, or absence of mistake or accident. Those types of issues.

Now, if there is evidence by this witness in which the witness makes allegations of conduct that may be criminal, then what I want you to understand is that the testimony by the witness is making—is testimony that is making allegations. There is no proof before you. And, indeed, there is, and I can represent to you as a matter of fact, that the defendant has never been proven guilty; nor, has he ever entered a plea of guilty with regard to any such allegations that may be made by this witness with regard to any conduct that occurred while the family was residing in Monmouth County.

But you are the fact finders, as I previously instructed you. And you have the right to judge, to assess rather, the credibility of each and every witness who appears during this trial to determine believability. And, you should understand then how you are to view this type of evidence that may be presented at this time. Not to indicate a disposition on the part of the defendant to commit a crime on another specified occasion, but to go to such issues of motive, intent, plan, knowledge, entity [sic], absence of mistake or accident. And, to remember that this testimony may center around allegations that this witness is making with regard to the defendant. And, you have the ultimate responsibility to make ultimate judgments here.

L.K. completed her direct testimony about the Monmouth County incident. At defense counsel's request, a side-bar conference was held, after which the court instructed the jury that defendant was never indicted and never stood trial for L.K.'s allegations. At the trial's conclusion, the court additionally instructed the jury:

There was testimony presented to you, I believe, by [L.K.], during the course of her testimony, with regard to allegations that she had made against [defendant] when the family was residing in Monmouth County. The evidence that she presented through her testimony, let me go over the instruction again with regard to your treatment of that evidence.

First of all, let me indicate to you that evidence or allegations by a witness that a defendant committed—or allegations of criminal wrongdoing by another person is

inadmissible to prove a disposition of an individual to commit a crime as the basis for an inference that individual committed a crime on another specified occasion. However, such allegations can be admitted to prove some other fact in issue; such as, motive, intent, plan, knowledge, entity [sic], or absence of mistake or accident, on the part of the person who it's alleged engaged in this activity.

So, with regard to this Monmouth County situation, let me—and the testimony that was presented there, that is how you should treat this particular evidence. You also, of course, again, have the obligation to assess the credibility of [L.K.] in presenting this evidence concerning these allegations when the family resided in Monmouth County.

Neither the State nor the defense requested more specific jury instructions. During summation, defense counsel again used the Monmouth County evidence as a method of attacking L.K.'s credibility. Counsel suggested that L.K. made the Monmouth County accusations in an attempt to avoid being spanked by defendant after receiving a poor school grade.

## II

■ There is an unavoidable tension inherent in other-crime evidence. The evidence of other crimes invariably is both probative and prejudicial. *State v. Stevens,* 115 *N.J.* 289, 300, 558 *A.2d* 833 (1989). The prejudice of other-crime evidence is its tendency to demonstrate a criminal predisposition; therefore, it poses a distinct risk that it will distract a jury from an independent consideration of the evidence that bears directly on guilt itself. *Id.* at 302, 558 *A.2d* 833 (citing Edward J. Imwinkelried, *The Need to Amend Federal Rule of Evidence 404(b): The Threat to the Future of the Federal Rules of Evidence,* 30 *Vill.L.Rev.* 1465, 1487 (1985) (observing that the effect of other-crime evidence is to persuade the jury to believe that defendant is guilty because "once a crook, always a crook")); *see also State v. Gibbons,* 105 *N.J.* 67, 77, 519 *A.2d* 350 (1987) (discussing the prejudicial dangers of other-crime evidence). Because of its prepotency for prejudice, the standards governing the admission of other-crime evidence seek to assure that its probative worth is more than marginal and is not outweighed by its prejudicial effect. Thus, the admissibility and use of other-crime evidence is determined through the appli-

cation of *N.J.R.E.* 105, 403, and 404(b) to assure that such evidence functions properly and fairly to guide the jury in its determination of criminal guilt. *State v. Cofield,* 127 *N.J.* 328, 334, 605 *A.2d* 230 (1992).

■ There was no disagreement within the lower courts that the Monmouth County evidence of sexual abuse was admissible as other-crime evidence under *N.J.R.E.* 404(b). As noted by the majority of the Appellate Division, that evidence was relevant to the issue of defendant's motive for fondling L.K. in Sussex County. 278 *N.J.Super.* at 161–62, 650 *A.2d* 819. The court also found that the conduct underlying the alleged offenses in Monmouth County was similar to and occurred within one year of the commencement of the Sussex County abuse, *id.* at 162, 650 *A.2d* 819, indicating that the conduct was not inadvertent, accidental, or unplanned. Finally, the court found that evidence of the Monmouth County offenses was sufficiently reliable because it had been found adequate to institute a charge against defendant for endangering the welfare of a child. *Ibid.* In addition, the Appellate Division noted that the other-crime evidence was also relevant to the issue of L.K.'s credibility, a purpose that is not specifically enumerated in the rules of evidence. *N.J.R.E.* 404(b). It concluded that the use of other-crime evidence for a purpose not specifically delineated in the evidence rule was proper. 278 *N.J.Super.* at 163, 650 *A.2d* 819 (citing *State v. Oliver,* 133 *N.J.* 141, 627 *A.2d* 144 (1993)).

■ The narrow issue, which divided the Appellate Division, is whether, as a result of the trial court's instructions, the use of that evidence by the jury was improper and prejudicial. Recognizing the special dangers posed by the conflicting impacts of other-crime evidence, this Court has required that when a trial court admits such evidence, the court must specifically instruct the jury about that evidence's limited relevance. This principle is illustrated by several cases.

In *Stevens, supra,* 115 *N.J.* 289, 558 *A.2d* 833, this Court addressed whether instructions governing the use of other-crime evidence lacked requisite specificity. *Id.* at 309, 558 *A.2d* 833.

There, a police officer was convicted of official misconduct and criminal coercion involving searches of arrested women motivated by sexual reasons. *Id.* at 293, 558 A.2d 833. The State presented evidence of similar previous incidents in which the officer intimidated female arrestees into undressing or providing sexual favors. *Id.* at 295–97, 558 A.2d 833. Its purpose was to show that the defendant conducted the searches to gratify his sexual desire, an element of the offense with which defendant was charged. *Id.* at 305, 558 A.2d 833.

This Court recounted the risks that other-crime evidence may pose to a defendant and then stated,

the inherently prejudicial nature of such evidence casts doubt on a jury's ability to follow even the most precise limiting instruction. Recognizing this dilemma, . . . [a] trial court instructing a jury on its use of other-crime evidence should state specifically the purposes for which the evidence may be considered and, to the extent necessary for the jury's understanding, the issues on which such evidence is not to be considered.

[*Id.* at 309, 558 A.2d 833.]

The Court found that the trial court's instruction did not adequately distinguish the evidence's permissible use from its impermissible use. *Ibid.*

Another example of an other-crime evidence charge lacking specificity is in *Cofield, supra,* 127 *N.J.* 328, 605 A.2d 230. There, the defendant was tried for drug offenses that occurred in August 1985. *Id.* at 331, 605 A.2d 230. The trial court admitted evidence of the defendant's subsequent September 1985 drug activity to establish defendant's possession with intent to distribute in August 1985. *Id.* at 331–32, 605 A.2d 230. The trial court instructed the jury that the other-crime evidence could not be used to show a predisposition to commit the crimes for which he is now charged but for the limited purpose of proving some other fact in issue.

The Court determined that the instructions were insufficient, finding that the instructions "merely restated the general provisions of Evidence Rule 55 [now *N.J.R.E.* 404(b) ] without focusing the jury's attention on finding constructive possession based on

the evidence of the September 4th incident." *Id.* at 341, 605 *A*.2d 230.

The instructions about the use of other-crime evidence were also deficient in *State v. Oliver, supra,* 133 *N.J.* 141, 627 *A*.2d 144. There, the defendant sexually assaulted two women in similar circumstances. At a joint trial, the court admitted the testimony of three other women who testified that defendant similarly assaulted them. *Id.* at 148, 627 *A*.2d 144. The trial court admitted the other-crime evidence, finding that it established a common scheme or plan that was relevant to defendant's intent. *Ibid.* At the close of the State's case, the trial court instructed the jury only about how the evidence could not be used. This Court, in a unanimous decision, upheld the Appellate Division's finding that the limiting instruction was inadequate. *Id.* at 158–59, 627 *A*.2d 144. The Court observed that, though the trial court's instruction was not as plainly erroneous as that provided in *Cofield,* the instruction was nevertheless deficient because it failed to state in contextual detail the permissible use of the evidence. *Id.* at 158–59, 627 *A*.2d 144.

A sufficient limiting instruction was given in *State v. Cusick,* 219 *N.J.Super.* 452, 467, 530 *A*.2d 806 (App.Div.), *certif. denied,* 109 *N.J.* 54, 532 *A*.2d 1118 (1987). The defendant was charged with, among other offenses, sexually assaulting two victims. 219 *N.J.Super.* at 464, 530 *A*.2d 806. Defendant argued that he had intended only to swing and cradle one of the victims but that any sexual contact was inadvertent. *Id.* at 464–65, 530 *A*.2d 806. The trial court admitted other-crime evidence to rebut defendant's claim of mistake and to establish defendant's intent. *Id.* at 465, 530 *A*.2d 806. The court gave the following limiting instruction concerning the testimony of one of three victims from a previous unrelated sexual assault.

> [Y]ou may not take this evidence from [the witness] and conclude from it that the defendant ... is a bad person, and thus has a disposition which shows that he is likely to have done the act which he is charged with, or to show a general predisposition of the defendant to commit bad acts....

The rules of evidence do, however, permit such testimony where such evidence ... relates to some other fact in issue here, including motive.... Here the evidence was admitted as it may bear on the issue of whether the alleged touching of [the victims] was accidental or it was a mistake. Likewise, it might also bear on the defendant's motive for allegedly touching the victims here. This is to obtain some sort of sexual gratification, or on the issue of his intention to touch the children, victims here.

[*Id.* at 466, 530 *A*.2d 806.]

The Appellate Division held that the jury instruction was sufficiently detailed and limited.

■ In this case, the Appellate Division noted that "[a] mere recitation of the generalities of the rule is insufficient.... The court must narrowly focus the jury's attention on the specific use of the other-crime evidence as illustrative of a proper charge." 278 *N.J.Super.* at 163–64, 650 *A*.2d 819 (quoting *Stevens, supra,* 115 *N.J.* at 309, 558 *A*.2d 833). Accordingly, it ruled that the trial court's instructions were insufficient because they failed explicitly to state that the evidence was admitted to: (1) demonstrate why L.K. never informed her mother of the Sussex County sexual abuse; and (2) establish the defendant's intent. *Id.* at 165–6, 650 *A*.2d 819. The trial court's failure to give more specific instructions left the jury free to use the Monmouth County evidence as proof of defendant's culpability for the Sussex County offenses. *Id.* at 166, 558 *A*.2d 833.

We concur in that analysis and conclusion. As we stated in *Cofield, supra,* " 'more is required to sustain a ruling admitting such evidence than the incantation of the illustrative exceptions contained in the Rule.' " 127 *N.J.* at 337, 605 *A*.2d 230 (quoting *Stevens, supra,* 115 *N.J.* at 305, 558 *A*.2d 833). On admission of other-crime evidence, the court must not only caution against a consideration of that evidence for improper purposes, it must through specific instruction direct and focus the jury's attention on the permissible purposes for which the evidence is to be considered. In this case, the trial court, in all three sets of instructions, failed to indicate the specific purposes for which the other-crime evidence could be considered.

## III

The Court must next determine whether this failure to issue limiting instruction resulted in prejudice to defendant. The issue arises as one of plain error because defendant did not object to the trial court's instruction on the grounds of lack of specificity. *R.* 2:10–2. Plain error is reversible if it is "clearly capable of producing an unjust result." *R.* 1:7–2; *R.* 2:10–2. Accordingly, the test to apply is whether the possibility of injustice is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." *State v. Macon*, 57 *N.J.* 325, 336, 273 *A.*2d 1 (1971).

Our decisions underscore the fact-specific inquiry that must be made to determine whether prejudice has resulted from the failure to give a sufficiently limiting instruction governing the use of other-crime evidence.

The Court in *Stevens* held that the deficiencies in the charge did not warrant reversal of defendant's convictions because the trial court had twice cautioned the jury against considering the other-crime evidence to prove defendant's disposition to commit the offenses with which he was charged. 115 *N.J.* at 309, 558 *A.*2d 833. The Court stressed that this cautionary instruction constituted the "essential point to be made in the limiting instruction." *Ibid.* Also, the Court found other ample evidence of defendant's guilt. *Ibid.* Accordingly, it determined that any error arising from a lack of clarity in the limiting instruction was harmless and not clearly capable of producing an unjust result under *Rule* 2:10–2. *Ibid.*

Similarly, the Appellate Division in *Cusick* found that the omission from the trial court's instruction was not prejudicial and did not require a reversal of defendant's conviction. 219 *N.J.Super.* at 467, 530 *A.*2d 806. The court reasoned that the omitted limiting instruction "had no such real possibility for prejudice as to warrant a conclusion that, by reason thereof, the jury arrived at the wrong result." *Ibid.* (quoting *State v. Hummel*, 132 *N.J.Super.*

412, 425, 334 *A.*2d 52 (App.Div.), *certif. denied,* 67 *N.J.* 102, 335 *A.*2d 54 (1975)).

However, in *Cofield,* observing that the codefendant used the other-crime evidence "to point the finger" at the defendant, the Court held that the trial court's instruction failed to cure the prejudicial impact of the other-crime evidence. *Id.* at 342, 605 *A.*2d 230. It concluded that this error was clearly capable of producing an unjust result, reversed the defendant's conviction, and remanded for a new trial. *Ibid.*

The Appellate Division majority here found that the erroneous jury charge did not constitute harmless error, concluding that defendant was denied his right to a fair trial. 278 *N.J.Super.* at 166, 650 *A.*2d 819. It did not, in our estimation, engage in a sufficiently fact-oriented inquiry to sustain that conclusion.

█ In this case, the other-crime evidence primarily posed two risks of harm to defendant. First, the danger of criminal disposition is identical to the danger addressed by the Court in *Stevens, Cofield* and *Oliver.* Here, the trial court, in all three sets of instructions, delivered a cautionary instruction, explaining to the jury that the evidence could not be used to show criminal disposition. Under *Stevens,* that instruction—there stated twice, here stated three times—successfully delivered the "essential point." Furthermore, in the third set of instructions, the trial court clearly identified the other-crime evidence for the jury, referring to it as "the Monmouth County situation."

The second danger is that had the trial court specifically delineated the two purposes for which the other-crime evidence had been admitted, the jury might have more readily concluded that defendant was not guilty. An examination of the record and jury instructions in this case reveals that the trial court's lack of specificity about the use of other-crime evidence did not create the real possibility that the jury reached the wrong result or significantly add to the likelihood that defendant would be found guilty, thereby constituting an unjust result.

Defense counsel referred to this evidence in both opening and closing statements as a basis for attacking L.K.'s credibility and focused specifically on proper use of the evidence. Even though the prosecutor, not the defense, initially sought to admit the Monmouth County evidence, the defendant's main defense was that his stepdaughter manufactured stories of molestation in an effort to have him removed from the house, thereby improving her social life. Defendant sought to use the Monmouth County evidence in this case to bolster that defense and in fact did so. Moreover, the defense was able to challenge L.K.'s credibility on cross-examination and through the cross-examination and affirmative testimony of other witnesses.

In addition, the trial court also clearly pointed out that defendant was neither convicted of nor plead guilty to the Monmouth County accusations, thus, indirectly, indicating to the jury a factor bearing on the relevance of the other-crime evidence to the general issue of credibility and specifically on L.K.'s motive and tendency to make false accusations of sexual abuse.

In addition, there was strong evidence outside the other-crime evidence showing defendant's guilt. L.K.'s accounts of the various sexual acts were consistent on both direct and cross-examination. Furthermore, her testimony was corroborated by the contents of the DYFS records and the testimony of A.C., A.C.'s guidance counselor, and L.K.'s former boyfriend. Further, the record contains a plausible explanation for why L.K. tried to conceal the abuse. Additionally, the record indicates that the defense's depiction of L.K. as a liar was not very strong. Much of this characterization of L.K. was derived from isolated witness statements about L.K.'s reputation for lying. The State, however, presented character witnesses who testified to L.K.'s honesty. Moreover, the defense's strongest witness was defendant's mother who testified that she neither observed nor sensed that L.K. was being abused. The jury might have doubted the truth of defendant's mother because of her deep personal interest in the outcome of the trial, which the State highlighted at trial.

In the context of the entire trial record, it does not appear that the omitted instruction to limit the use of other-crime evidence to assessing L.K.'s credibility and defendant's sexual motivation would have tipped the jury's deliberations in favor of a non-guilty verdict. This is especially so with the strong, repeated admonitions not to use the other-crime evidence to establish a criminal predisposition. An examination of all the testimony and evidence, defense counsel's use of the Monmouth County evidence, and the trial court's cautionary instructions indicates that the jury was not misled in this case into using the other-crime evidence as demonstrating criminal propensity.

## IV

The trial court's instructions did not result in reversible error. The judgment of the Appellate Division is reversed.

POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN, JJ., concur.

*For reversal*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.