688 A.2d 1060

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. CHESTER LEE BOWSER, DEFENDANT–
APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 17, 1996—Decided January 31, 1997.

Before Judges MICHELS, KLEINER and COBURN.

*Susan L. Reisner*, Public Defender, attorney for appellant (*Jean M. Hartmann*, Designated Counsel, of counsel and on the brief).

*Maryann K. Bielamowicz*, Mercer County Prosecutor, attorney for respondent (*Thomas F. Fichter*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Tried before a jury, defendant, Chester Lee Bowser, was convicted of first-degree robbery, *N.J.S.A.* 2C:15–1 and *N.J.S.A.* 2C:2–6 (count one); third-degree theft by unlawful taking, *N.J.S.A.* 2C:20–3a and *N.J.S.A.* 2C:2–6 (count two); fourth-degree aggravated assault, *N.J.S.A.* 2C:12–1b(4) and *N.J.S.A.* 2C:2–6 (count three); second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4a and *N.J.S.A.* 2C:2–6 (count four); and third-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5b and *N.J.S.A.* 2C:2–6 (count five).

Defendant was sentenced to a custodial term of sixteen years with a six-year period of parole ineligibility pursuant to the *Graves* Act, *N.J.S.A.* 2C:43–6, on count one. Defendant's convictions on counts two through five were merged into his conviction

on count one.[1] Defendant was also ordered to pay $1,000 as restitution to the victim and $30 to the Violent Crimes Compensation Board.

After defendant's trial, he entered into a plea agreement on an unrelated indictment charging third-degree receipt of stolen property, *N.J.S.A.* 2C:20–7a. Defendant was sentenced to a custodial term of five years for this offense to be served concurrent to his sentence for first-degree robbery. Appropriate statutory penalties were imposed, and defendant was also ordered to pay $200 as restitution to his victim.

On appeal, defendant raises nine points of error:

## POINT I

THE PROSECUTION'S INTRODUCTION INTO EVIDENCE OF INCRIMINATING PORTIONS OF CO–DEFENDANT'S STATEMENT, CONSISTING OF PREJUDICIAL HEARSAY, DENIED THE DEFENDANT HIS RIGHT TO CONFRONTATION AND ITS ADMISSION CONSTITUTED REVERSIBLE ERROR (Not Raised Below).

## POINT II

INTRODUCTION OF OTHER UNCHARGED CRIMINAL ACTIVITY BY THE DEFENDANT WAS ERROR.

## POINT III

THE FAILURE OF THE TRIAL COURT TO INSTRUCT THE JURY OF THE LIMITED RELEVANCE OF OTHER CRIMES EVIDENCE CONSTITUTED REVERSIBLE ERROR (Not Raised Below).

## POINT IV

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON THE LESSER INCLUDED OF-

---

[1] It was error to merge count five into count one. A conviction for unlawful possession of a handgun should not merge with robbery while armed with the same gun. *See, e.g., State v. Cooper,* 211 *N.J.Super.* 1, 22, 510 A.2d 681 (App.Div.1986); *State v. Anderson,* 198 *N.J.Super.* 340, 359, 486 A.2d 1311 (App.Div.), *certif. denied,* 101 *N.J.* 283, 501 A.2d 946 (1985).

FENSE OF SECOND DEGREE ROBBERY AND WHEN IT GAVE INSUFFI-
CIENT INSTRUCTIONS ON FIRST DEGREE ROBBERY, AGGRAVATED
ASSAULT, UNLAWFUL POSSESSION OF A WEAPON AND POSSESSION
OF A FIREARM FOR AN UNLAWFUL PURPOSE (Not Raised Below).

## POINT V

IMPROPER IMPEACHMENT OF THE DEFENDANT ON AN IRRELEVANT
MATTER BY INADMISSIBLE EXTRINSIC EVIDENCE WAS ERROR (Not
Raised Below).

## POINT VI

PROSECUTORIAL MISCONDUCT, CONSISTING OF: PRESENTING INAD-
MISSIBLE OTHER CRIMES EVIDENCE; IMPEACHING THE DEFEN-
DANT ON A COLLATERAL MATTER; IMPEACHING THE DEFENDANT
WITH INADMISSIBLE EXTRINSIC EVIDENCE; VOUCHING FOR A WIT-
NESS DURING SUMMATION; ADVANCING THEORY THAT DEFENDANT
NEEDED MONEY FOR DRUGS AND HAD NO OTHER SOURCE OF IN-
COME; AND, ELICITING INADMISSIBLE HEARSAY INFORMATION
FROM WITNESSES IN ORDER TO BUTTRESS OTHER WITNESSES TES-
TIMONY AS WELL AS THE PROSECUTION CASE, DEPRIVED THE DE-
FENDANT OF A FAIR TRIAL (Not Raised Below).

## POINT VII

DEFENSE COUNSEL'S NUMEROUS FAILURES TO PROTECT THE DE-
FENDANT'S RIGHT TO A FAIR TRIAL DEPRIVED HIM OF EFFECTIVE
ASSISTANCE OF COUNSEL. *U.S. CONST. AMEND. VI*; *N.J. CONST.* ART.
I, PAR. 10 (Not raised below).

## POINT VIII

THE SENTENCE IMPOSED BY THE LOWER COURT WAS INAPPROPRI-
ATE BECAUSE IT FAILED TO HOLD A SEPARATE HEARING TO ESTAB-
LISH THAT THE DEFENDANT POSSESSED THE WEAPON FOR PUR-
POSES OF THE GRAVES ACT AND THIS ISSUE WAS NEVER SUBMITTED
BY WAY OF INSTRUCTION TO THE JURY (Not Raised Below).

## POINT IX

THE TRIAL COURT ERRED IN IMPOSING A SENTENCE IN EXCESS OF
THE PRESUMPTIVE TERM (Not Raised Below).

On November 13, 1991, defendant visited the home of his co-
defendant, Jason Ash. During the visit, either defendant or Ash's

wife telephoned a nearby convenience store to find out what time it closed. Defendant and Ash then left the Ash residence and proceeded to the convenience store. According to the proprietor, Ash stood near the register while defendant walked around the store selecting items to purchase. When defendant walked over to the cash register, Ash pulled a handgun and demanded money from the proprietor. Ash grabbed a blue money bag and defendant, allegedly, reached his hand into the cash register and removed money. Both men then fled the market.[2]

The proprietor was able to identify Ash. He was unable to identify defendant but did describe defendant to the police. Ultimately, Ash's wife turned Ash in to the police. Ash confessed to the crime, led the police to the money bag, and showed them to a nearby river into which he had thrown the weapon. Both the money bag and the weapon were recovered. Ash provided the police with defendant's name and told them that defendant had given him the gun shortly before they entered the convenience store. Ash also told the police that it was defendant's idea to commit the robbery.

At trial, the State called the following witnesses: the proprietor; Ash's wife; a baby-sitter, whom Ash employed after the robbery; Ash's brother, who observed defendant and Ash using crack cocaine the evening of the armed robbery; and Sergeant Ashbock to whom Ash had given his written confession. The baby-sitter indicated that, after he returned home from the convenience store, Ash gave her $40 to watch his child and that he had a large sum of money. Ash's brother testified that he saw Ash and defendant smoking crack cocaine outside of his own residence that night and that defendant admitted that he and Ash had committed a robbery. Ash, who pled guilty to armed robbery and was sentenced prior to defendant's trial, did not testify for the State.

---

[2] The victim contended that defendant fled the market first. Defendant testified that Ash fled the market and that he followed Ash.

During the cross-examination of Sergeant Ashbock, defense counsel elicited information that Ashbock had learned during Ash's confession. The elicited testimony was exculpatory towards defendant. During the redirect of Sergeant Ashbock, the prosecutor elicited, without objection of defense counsel, that, according to Ash's confession, defendant had supplied the gun that was used in the robbery and that defendant planned the robbery while Ash and defendant were en route to the convenience store.

On appeal, defendant contends that the admission of testimony about Ash's confession was reversible error. Defendant also contends that the failure to object on this point illustrates the ineffective assistance rendered by his counsel. In response, the State contends that the redirect examination of Sergeant Ashbock was permitted because defendant's cross-examination about Ash's statement "opened the door" to the entire content of the confession, thus rendering the redirect examination a "tag along." Additionally, the State contends that defendant's conviction should be affirmed and that any analysis of defense counsel's ineffectiveness should be decided later in a future proceeding seeking post-conviction relief.

I

The Confrontation Clause of the Sixth Amendment "guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.' The right of confrontation includes the right to cross-examine witnesses." *Richardson v. Marsh*, 481 *U.S.* 200, 206, 107 *S.Ct.* 1702, 1706–07, 95 *L.Ed.*2d 176, 185 (1987). This right also extends to criminal defendants facing state prosecution. *Pointer v. Texas*, 380 *U.S.* 400, 85 *S.Ct.* 1065, 13 *L.Ed.*2d 923 (1965). Admission of a pre-trial confession by a co-defendant violates the accused's right of cross-examination under the confrontation clause of the Sixth Amendment. *See, e.g., Bruton v. United States*, 391 *U.S.* 123, 126, 88 *S.Ct.* 1620, 1622, 20 *L.Ed.*2d 476, 479 (1968).

In *State v. Laboy*, 270 *N.J.Super.* 296, 302–305, 637 *A.*2d 184 (App.Div.1994), this court discussed in detail the interests protected by the Confrontation Clause and particularly noted that:

> Our Supreme Court has taken a parallel course in protecting the defendant's right to confrontation under New Jersey's common law. *See State v. Maristany*, 133 *N.J.* 299, 627 *A.*2d 1066 (1993); *State v. Manning*, 82 *N.J.* 417, 421–22, 413 *A.*2d 605 (1980); *State v. Young*, 46 *N.J.* 152, 156–57, 215 *A.*2d 352 (1965); *State v. Colon*, 246 *N.J.Super.* 608, 612, 588 *A.*2d 440 (App.Div.1991), *cf. State v. Gross*, 121 *N.J.* 1, 11, 577 *A.*2d 806 (1990). Indeed, it can fairly be said that the Court has been more protective of the defendant's right to cross-examine than its federal counterpart. Several years before the United States Supreme Court's pronouncement in *Bruton*, our Court held that an out-of-court confession of one defendant could not be used against the other and that a limiting instruction would not suffice to eradicate the potential for prejudice as to the non-confessing defendant. *State v. Young*, 46 *N.J.* at 157, 215 *A.*2d 352.
>
> [*Laboy, supra*, 270 *N.J.Super.* at 304–05, 637 *A.*2d 184.]

We concluded that the admission of an officer's testimony regarding an out-of-court statement by a co-defendant that incriminated the defendant, "clearly violated [the defendant's] right of confrontation under the Federal Constitution and New Jersey's common law." *Id.* at 305, 637 *A.*2d 184.

■ The State argues that *State v. Powers*, 72 *N.J.* 346, 370 *A.*2d 854 (1977), and *State v. Abrams*, 140 *N.J.Super.* 232, 356 *A.*2d 26 (App.Div.1976), *aff'd o.b.*, 72 *N.J.* 342, 370 *A.*2d 852 (1977), permit the use of inculpatory statements against defendant because they are intrinsically intertwined with Ash's statements against his penal interest. The State's argument ignores other decisions of this court and the Supreme Court and must be rejected.

In *State v. Colon*, 246 *N.J.Super.* 608, 588 *A.*2d 440 (App.Div. 1991), the defendant was driving co-defendant's car at a high rate of speed on the Turnpike when he was pulled over. A state trooper discovered three vials of crack cocaine on the console and then searched the car, finding a bag containing over five pounds of crack cocaine in front of the driver's seat. Defendant admitted that the three vials of cocaine were his but maintained that he was unaware of the bag of cocaine and had merely agreed to drive the car in exchange for the three vials of crack. At trial, the

defendant called a police officer who testified that the co-defendant had told him that she, the co-defendant, had purchased the cocaine in the Bronx. The police officer also testified that he discovered that the co-defendant was extensively involved in drug trafficking. Defendant was apparently attempting to demonstrate that he had fallen into the situation innocently. While the co-defendant did not testify, the court admitted these statements as declarations against interest.

On cross-examination, the officer was asked what the co-defendant had said regarding the defendant's knowledge of the cocaine, and the officer replied, "[s]he advised me that he knew the cocaine was in the car. He knew the amount of the cocaine and he knew where it was going." *Id.* at 611, 588 *A.*2d 440. The State contended that the inculpatory portions of the statement were admissible under the doctrine of continuing trustworthiness as "tag along" pursuant to *Abrams, supra,* and *Powers, supra.* We noted that in those cases it was the *exculpatory* material that was admitted by the trial court. *Colon, supra,* 246 *N.J.Super.* at 611–12, 588 *A.*2d 440. The court stated:

> The facts, however, were the converse of those here, where the question addresses the admissibility against defendant of the part of a codefendant's confession that is inculpatory as to the defendant where defendant had introduced the portion of codefendant's confession that may exculpate him.
>
> The rationale underlying *Powers* and *Abrams* does not lie in the mere fact that the self-incriminatory and the exculpatory statements were made side-by-side. It lies in the fact that the latter was intrinsic to the former. In *Abrams*, the declarant codefendant, Smith, admitted selling cocaine to an undercover detective but denied that she had obtained the contraband from defendant Abrams. As the Appellate Division said, that exculpatory declaration formed part of the declaration against interest because "it intensifies her personal criminal responsibility for the transaction."
>
> [*Id.* at 612, 588 *A.*2d 440 (quoting *Abrams, supra,* 140 *N.J.Super.* at 235, 356 *A.*2d 26).]

We later concluded:

> We do not overlook the State's argument that fairness to the prosecution requires that since defendant was permitted to introduce that part of [the co-defendant's] statement which favored the defense, the incriminating portion should also be received in order to convey the complete meaning of what the declarant was saying. The argument, while superficially attractive, misses the evidential princi-

> ple that marks the distinction between the two facets of what [co-defendant] said. On the one hand, we have a statement admitted under an exception to the hearsay rule because of its guarantee of testimonial trustworthiness as a declaration against interest. The theory of trustworthiness which supports the exception is that the statement so far subjects the declarant to criminal liability "that a reasonable man [woman] in his [her] position would not have made the statement unless he [she] believed it to be true...." [Former] *N.J.R. Evid.* 63(10). The statement inculpating defendant, on the other hand, carries no such guarantee and, in fact, because of its self-serving nature, is presumed to be unreliable, something which is aggravated by the absence of any opportunity for cross-examination. We therefore see no lack of fairness to the State in precluding it from countering a presumably trustworthy statement with one that is presumably untrustworthy.
>
> [*Colon*, 246 *N.J.Super.* at 613, 588 *A.*2d 440 (alterations in original).]

We also noted that former *N.J.R.E.* 63(10) barred the introduction of a declaration against interest "against a defendant other than the declarant in a criminal prosecution." *Id.* at 614, 588 *A.*2d 440 (quoting *N.J.R.E.* 63(10)). We concluded that the defendant's conviction must be reversed on these bases. *Ibid.*

Current *N.J.R.E.* 803(c)(25) contains the hearsay exception for a statement against interest and allows for the admission of:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary, proprietary, or social interest, or so far tended to subject declarant to civil or criminal liability, or to render invalid declarant's claim against another, that a reasonable person in declarant's position would not have made the statement unless the person believed it to be true. *Such a statement is admissible against an accused in a criminal action only if the accused was the declarant.*
>
> [*Ibid.* (emphasis added).]

In *State v. Maristany, supra,* 133 *N.J.* at 308, 627 *A.*2d 1066, a trooper testified at trial that the co-defendant had stated out of court that the defendant had placed a blue bag containing cocaine in the trunk of the car and that the co-defendant was unaware of what was in it. The Supreme Court agreed with the Appellate Division that these statements were "rank hearsay" and stated that the "statement possesses all of the invidious attributes of hearsay. Made after cocaine had been discovered, [co-defendant's] self-serving, exculpatory statement lacks reliability. Further, the statement serves to incriminate defendant without affording him the opportunity to cross-examine [the co-defendant]." *Id.* at 309, 627 *A.*2d 1066. The Court concluded that the admission

of this evidence violated former *N.J.R.E.* 63 and violated the defendant's fundamental right to confront witnesses. *Id.* at 310, 627 *A.*2d 1066.

The facts of this case are identical to those in *Colon* and similar to those in *Maristany* and *Laboy.* In each case, a police officer testified regarding a statement made by a co-defendant that tended to inculpate the defendant. In each case, the co-defendant did not testify. In *Colon* and in this case, the defendant first obtained testimony from the officer regarding statements by the co-defendant which tended to exculpate the defendant. The court in *Maristany, Colon,* and *Laboy* all concluded that the admission of the co-defendant's statements inculpating the defendant was prejudicial error requiring reversal.

The rationale employed in those cases requires the reversal of defendant's conviction. Although defense counsel failed to object, we cannot conclude that the error was harmless. The issue is whether the error is plain error. *See R.* 2:10–2. Plain error is reversible if it is "clearly capable of producing an unjust result." *Ibid.; see also R.* 1:7–2. The test is whether the possibility of injustice is "sufficient to raise a reasonable doubt as to whether the error led the jury to a result that it otherwise might not have reached." *State v. Macon,* 57 *N.J.* 325, 336, 273 *A.*2d 1 (1971). Since Ash's confession, which was not subject to cross-examination, completely undermined the defense offered by defendant, its admission raises a reasonable doubt as to whether the error led the jury to a result that it otherwise might not have reached.

We conclude that admitting Ashbock's testimony regarding Ash's out-of-court confession clearly violated defendant's right of confrontation under the federal Constitution and New Jersey's common law, thus warranting reversal of defendant's conviction.

II

Even if the error discussed in Part I of this opinion were harmless, it is clear that other judicial error in this trial warrants

reversal of defendant's conviction. The trial judge's failure to give a cautionary instruction on the admission of evidence about defendant's use of crack cocaine on the evening of the armed robbery *and* the failure of the trial judge to instruct the jury properly on accomplice liability and the gradations of robbery are of such magnitude that defendant's conviction must be reversed.

## A.

■ On a motion *in limine,* defendant's counsel sought to prevent the introduction of any evidence that defendant and Ash were observed smoking crack cocaine on the evening of the robbery after they arrived home from the convenience store. The State contended that the use of drugs was evidence of motive to commit the crime, i.e., defendant and Ash needed money to purchase drugs. Although on appeal defendant contends that the judge erred in permitting the State to introduce this evidence, the correctness of that contention need not be addressed. The more significant error was the failure of the trial judge, once he decided to admit the evidence, to give the jury any cautionary instruction limiting the use of that testimony as required by *State v. G.S.,* 145 *N.J.* 460, 678 *A.*2d 1092 (1996).

In *G.S.,* the Supreme Court noted:

There is an unavoidable tension inherent in other-crime evidence. The evidence of other crimes invariably is both probative and prejudicial. The prejudice of other-crime evidence is its tendency to demonstrate a criminal predisposition; therefore, it poses a distinct risk that it will distract a jury from an independent consideration of the evidence that bears directly on guilt itself.

[*Id.* at 468, 678 *A.*2d 1092 (citations omitted).]

The Court additionally stressed:

The narrow issue, which divided the Appellate Division, is whether, as a result of the trial court's instructions, the use of that evidence by the jury was improper and prejudicial. Recognizing the special dangers posed by the conflicting impacts of other-crime evidence, this Court has required that when a trial court admits such evidence, *the court must specifically instruct the jury about that evidence's limited relevance.*

[*Id.* at 469, 678 *A.*2d 1092 (emphasis added).]

██ *G.S.* instructs that a reversal is mandated when a limited instruction is not given unless the absence of a limiting instruction is deemed harmless. *Id.* at 474, 678 *A.*2d 1092. The courts of this State have often enunciated this principle. *See, e.g., State v. Oliver,* 133 *N.J.* 141, 627 *A.*2d 144 (1993); *State v. Cofield,* 127 *N.J.* 328, 605 *A.*2d 230 (1992); *State v. Stevens,* 115 *N.J.* 289, 304, 558 *A.*2d 833 (1989); *State v. Cusick,* 219 *N.J.Super.* 452, 467, 530 *A.*2d 806 (App.Div.), *certif. denied,* 109 *N.J.* 54, 532 *A.*2d 1118 (1987). We hold that the failure to give a limiting instruction in this instance was not harmless error. This conclusion becomes clearer when we consider the testimony of defendant.

Defendant readily admitted that he was with Ash in the convenience store during the armed robbery. Defendant, however, denied any involvement in the armed robbery and specifically denied having any knowledge that Ash possessed a weapon or intended to use the weapon to rob the convenience store. Defendant's testimony contradicted the testimony of the victim in some key respects. The victim indicated that defendant did not seem surprised when Ash withdrew the gun, that defendant grabbed money from the cash register, and that defendant fled the store before Ash. Without a limiting instruction, the jury might make the impermissible inference that, as a crack cocaine user, defendant was a "bad person" and not one who should be believed. *See Cofield, supra,* 127 *N.J.* at 328, 605 *A.*2d 230.

## B.

██ Defendant claims that it was plain error for the trial court to fail to instruct the jury on second-degree robbery and to instruct them that defendant must have shared the co-defendant's specific purpose to use the weapon in order for defendant to be convicted of first-degree robbery. We agree.

The trial judge instructed the jury that:

In order to convict the defendant of the charge of robbery in the first degree, the state must prove beyond a reasonable doubt the following: One, that the defendant was in the course of committing a theft; two, that while in the course of committing

a theft, Jason Ash threatened [the victim] with bodily injury or inflicted bodily injury upon him, three, that Jason Ash was armed with a deadly weapon; four, that the defendant was an accomplice of Jason Ash; and five, that the defendant acted purposely.

In *State v. White*, 98 *N.J.* 122, 484 *A.*2d 691 (1984), the Court was faced with the question of whether an accomplice, not holding a weapon, can be found guilty of an armed *Graves* Act offense. The Court noted that "[b]y definition an accomplice must be a person who acts with the *purpose* of promoting or facilitating the commission of *the* substantive offense for which he is charged as an accomplice." *Id.* at 129, 484 *A.*2d 691. The Court pointed out that "[f]or both the accomplice and his partner to be guilty, 'it is essential that they shared in the intent which is the crime's basic element....'" *Ibid.* (quoting *State v. Fair*, 45 *N.J.* 77, 95, 211 *A.*2d 359 (1965)).

The Court further stated:

An accomplice may be guilty of armed robbery even though he did not personally possess or use the firearm in the course of the commission of the robbery. The accomplice has committed the same crime as the individual who possessed or used the gun if the accomplice had the purpose to promote or facilitate that crime, namely, robbery with the use of a firearm.... One is the alter ego of the other.
[*Id.* at 130, 211 *A.*2d 359.]

The Court also noted that "[i]t is possible for an accomplice to be guilty of robbery and for his compatriot to be guilty of armed robbery." *Id.* at 131, 211 *A.*2d 359. In that respect, the Court stated:

[I]f the accomplice, though found guilty only of robbery, knew or had reason to know before the crime was committed that his partner would possess or use a firearm while the crime was being committed, or during the immediate flight thereafter, the trial court should apply the Graves Act. If the accomplice did not know or have reason to know beforehand that his partner would possess or use a firearm during those periods, then the Graves Act would be inapplicable. The deterrent effect—the *raison d'etre*—of the Graves Act is preserved.
[*Ibid.*]

These principles were thereafter applied in *State v. Weeks*, 107 *N.J.* 396, 526 *A.*2d 1077 (1987). In *Weeks*, there was abundant evidence that the defendant was guilty of robbery based on the defendant's serving as a "wheel man" in an armed robbery of a bakery. The Court stated that "what we find troubling is the fact that the jury may not have known that an essential element of the

accomplice liability charged is that the accomplice share the *purpose* to commit an *armed robbery.*" *Id.* at 405, 526 *A.*2d 1077. The Court noted that the trial court's instruction "did not clearly require the jury to find that defendant had shared the purpose to commit a robbery *with a weapon.*" *Ibid.* The Court concluded that the erroneous instruction, along with other trial court errors, required reversal of defendant's conviction. *Id.* at 409, 526 *A.*2d 1077. *Accord State v. Bielkiewicz,* 267 *N.J.Super.* 520, 527, 632 *A.*2d 277 (App.Div.1993); *State v. Hammock,* 214 *N.J.Super.* 320, 322, 519 *A.*2d 364 (App.Div.1986).

Here, each impropriety in the jury charge constitutes plain error, and each omission, independent of the other, requires a reversal of defendant's conviction because each omission was plain error. *See R.* 2:10–2; *see also State v. Martin,* 119 *N.J.* 2, 15, 573 *A.*2d 1359 (1990).

### III

Because of the series of errors we have discussed, we do not find it necessary to consider points five through nine, raised in defendant's brief on appeal.

We do note, however, as to point five, that *N.J.R.E.* 607 states that:

> Except as otherwise provided by Rules 405 and 608, for the purpose of impairing or supporting the credibility of a witness, any party including the party calling the witness may examine the witness and introduce extrinsic evidence relevant to the issue of credibility....
>
> [*Ibid.*]

■ In *State v. Martini,* 131 *N.J.* 176, 255, 619 *A.*2d 1208 (1993), *cert. denied,* —— *U.S.* ——, 116 *S.Ct.* 203, 133 *L.Ed.*2d 137 (1993), the Supreme Court stated:

> That the credibility of a witness may be impeached on cross-examination is well settled. The scope of cross-examination is a matter resting in the broad discretion of the trial court.
>
> Cross-examination relating to a witness's credibility need not be based on evidence adduced at trial.
>
> [*Ibid.* (citations omitted).]

"A party may introduce extrinsic evidence relevant to credibility, whether or not that extrinsic evidence bears upon the subject

matter of the action." *State v. Johnson*, 216 *N.J.Super.* 588, 603, 524 *A*.2d 826 (App.Div.1987).

In this case, it was the defendant's counsel who raised the employment issue on direct examination and elicited the testimony that defendant earned between $500 and $600 a week in an apparent effort to demonstrate that the defendant did not have a financial motive for the crime. The State's cross-examination rebutted this point and was designed to affect the credibility of the defendant. It was not designed to prove that the defendant was indigent and more likely to commit the crime.[3]

Point six addresses allegations of prosecutorial misconduct. We see no useful purpose to parse the record and discuss each particular claim of prosecutorial misconduct. We are satisfied that, prior to the retrial of this matter, the prosecutor will read both the entire record of this trial and defendant's brief as filed with this court and will thus be made aware of defendant's particular criticisms. We presume that the prosecutor assigned to the State's case will adhere to the principles enunciated in *State v.*

---

[3] Although the cross-examination was designed to affect defendant's credibility, we do not wish to imply that the actual questions asked were proper. They were not.

In defendant's case, defendant testified on direct examination that at the time of the robbery he was employed and earning approximately $500 to $600 per week. On cross-examination, the prosecutor introduced into evidence a report prepared by the detective who interviewed defendant. The prosecutor asked defendant to read the report. The following colloquy ensued:

Q. Okay, so you would agree that you told the police that you are unemployed at that time, would you not?

A. No, I wouldn't.

Q. So when this document that was a docket report written by a detective in this case indicates that you are were unemployed at that time, that's inaccurate?

A. Are you asking me a question?

Q. I'm asking if this is inaccurate information.

A. Yes, it is.

Defendant's counsel failed to object. This error should not recur at defendant's retrial. We also note, that defendant has not raised this point on appeal.

*Ramseur,* 106 *N.J.* 123, 524 *A.*2d 188 (1987), *cert. denied,* 508 *U.S.* 947, 113 *S.Ct.* 2433, 124 *L.Ed.*2d 653 (1993), the cases cited therein, and Canon 5 of the *Canons of Professional Ethics* which provides that "[t]he primary duty of a lawyer engaged in public prosecution is not to convict, but to see that justice is done." *See also State v. Farrell,* 61 *N.J.* 99, 104–05, 293 *A.*2d 176 (1972) (citing *Berger v. United States,* 295 *U.S.* 78, 88, 55 *S.Ct.* 629, 633, 79 *L.Ed.* 1314, 1321 (1935)).

Additionally, defendant's contention that he was provided ineffective assistance of counsel (point seven), that the trial judge erred when he imposed sentence without first conducting a separate hearing as to the applicability of the *Graves* Act (point eight), and that the sentence actually imposed was excessive (point nine), are rendered moot by our decision.

Reversed and remanded for a new trial.